### FOURNACE v. BOWLES, Price Administrator.

#### No. 163.

United States Emergency Court of Appeals. Heard at Indianapolis Jan. 31, 1945.

Decided March 15, 1945.

Rehearing Denied April 17, 1945.

Writ of Certiorari Denied June 18, 1945.

See 65 S.Ct. 1573.

---

Albert Stump, of Indianapolis, Ind. (Clyde P. Miller, of Indianapolis, Ind., was on the brief), for complainant.

Nathaniel L. Nathanson, Associate Gen. Counsel, and Joseph Brenner, Atty., both of Washington, D. C. (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Chief, Court Review Price Branch, and Miss Josephine H. Klein, Atty., all of Office of Price Ad-

ministration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

MARIS, Chief Judge.

The complainant, with leave of the United States District Court for the Southern District of Indiana, has filed his complaint under Section 204(e) (1) of the Emergency Price Control Act, 50 U.S.C.A. Appendix § 924(e) (1), seeking a determination of the invalidity of Maximum Price Regulations Nos. 139, 294 and 372, which establish maximum prices for the sale of used mechanical refrigerators, vacuum cleaners and washing machines, respectively. The respondent filed an answer which denied certain allegations of fact of the complaint and the complainant then filed an application for leave to introduce evidence under our Rule 18(a), 50 U.S.C.A. Appendix following section 924, in support of some, but not all, of the allegations thus controverted. Thereupon the respondent filed under that rule objections to the application and a motion to dismiss the complaint or to strike portions thereof on the ground that the evidence offered, even if true, would be insufficient to establish a right to relief.

■■■■ The respondent objects to the complainant's application for leave to introduce evidence as being too vague, indefinite and uncertain in that it does not contain a recitation of the specific facts and circumstances sought to be put in evidence. Rule 18(a) requires such an application to set forth the character and form of the evidence and a summary of what it would show if admitted. The complainant's application states whether the proffered evidence is oral or written, it describes the witnesses by whom the oral evidence is to be given and the documents which constitute the written evidence, and it sets forth a summary statement of the ultimate or basic facts which the evidence is expected to establish. We think that the application sufficiently complies with Rule 18(a). It is not the intention of that rule to require a recitation of the testimony or of the contents of the documents by which the complainant proposes to establish the ultimate or basic facts in issue. We, therefore, overrule the objections to the form of the complainant's application for leave to introduce evidence and pass to the considera-

tion of the respondent's motion to dismiss the complaint.

■■■■ The motion to dismiss is based upon the proposition that the averments of the complaint which are admitted and those which, although denied, are supported by the proffered evidence are not sufficient to establish the invalidity of the regulations in question. The averments which are thus to be taken as true for the purposes of this motion relate to a number of distinct objections which fall into three main categories. The first of these, which is set forth in paragraph 1 of section V of the complaint, is that the regulations were invalid because they were so vague and indefinite as not to disclose whether or not the cost of rehabilitating and reconditioning the used appliances covered by the regulations so that they would be in a usable condition, could be included in the sale price obtained by the dealer. The complainant has offered no evidence which is relevant to this narrow issue and indeed he could hardly have done so since it involves a question which may be resolved by the mere examination of the language of the regulations themselves. We have looked at each of the regulations in question and find them to be quite definite and certain in the respect here in question. MPR 139 and MPR 294 both give separate maximum prices for appliances "as is" and for "reconditioned" or "rebuilt" appliances. These terms are precisely defined. MPR 372 gives separate prices for used washing machines when "guaranteed" and when "not guaranteed". Here also the standards for machines sold with and without a guaranty are precisely stated. For any literate person there could be no uncertainty as to the price at which a rehabilitated or reconditioned appliance may lawfully be sold under these regulations. We find the first objection to be wholly without merit.

■■■■ In subparagraphs (1) to (5) of paragraph 1 of section V of the complaint it is also asserted that the regulations are too indefinite in a number of other respects. These latter contentions we cannot consider, however, since the District Court did not give the complainant leave to set them forth in his complaint in this court as provided by Section 204(e) (1) of the Act. Section 204(e) (1) requires that each individual objection which the complainant desires to present to this court must first be presented to the District Court for its determination as to whether the particular ob-

jection is made in good faith and as to whether there was a reasonable and substantial excuse for the complainant's failure to present it in a protest filed under Section 203, 50 U.S.C.A.Appendix § 923. If the District Court grants leave to file a complaint in this court with respect to any one or more of the objections thus presented to it the complaint may be filed "pursuant to * * * such leave." This obviously means that the complaint may set forth only those objections with respect to which leave has been granted by the district court.

The second main ground of objection asserted by the complainant is that the regulations are not designed to carry out the purposes of the Act but in fact tend to defeat those purposes. The complainant urges in this connection, in subparagraphs (1) to (6) of paragraph 2 of section V of the complaint, that the regulations defeat the purposes of the Act because the prices fixed by the regulations are not sufficient to induce families to combine and create a surplus of essential refrigerators, which they would then release for sale to others; that higher prices for the articles would not induce persons to enter the appliance manufacturing business because the manufacture of such appliances was already prohibited; that defense appropriations could not be dissipated or affected by higher prices because practically no additional material was required in reconditioning refrigerators and appliances, only "patient and painstaking labor * * * not of the highly skilled type necessary generally in war production"; that persons with fixed and limited incomes would be denied the service the merchants can render in making used appliances available, in the absence of a return of costs to the merchants; that costs of living have been affected by increased wages necessitating higher prices for appliances and that such higher prices would not materially increase the annual costs of living.

 There is no merit in these contentions. While it is true that one of the purposes of the Act is "to assist in securing adequate production of commodities", it must be remembered that this object is to be furthered in connection with the dominant objective of stabilizing prices. The release of present controls on the prices of the used appliances dealt in by the complainant might induce owners to offer them for sale, as the complainant suggests. Such a policy would, however, be inconsistent with general stabilization since it would inevitably result, in the present state of the economy, in an inflationary spiral in the prices of these appliances. They would, therefore, soon find their way into the hands of those consumers having the largest incomes. Any such action would run directly counter to the stated purpose of the Act "to protect persons with relatively fixed and limited incomes * * * from undue impairment of their standards of living."

If it be suggested that price controls be retained, but at a higher level, the Administrator properly answers that it is wholly doubtful whether any useful criteria can be evolved for measuring the general level of prices necessary to bring into the market refrigerators and similar appliances in the hands of consumers. Strictly economic or quantitative considerations do not alone determine when a consumer will part with such an appliance. Personal expectations and hopes for the future, personal habits and preferences, all enter into the highly subjective decision which must be made in each case. The attempt to prove the propriety of a given price level would turn this proceeding into the pursuit of a will o' the wisp. As a practical matter, the problem of wartime prices can be dealt with only in terms of business costs of production and distribution.

 It is also alleged in paragraph 3 of section V of the complaint that the regulations were unreasonable because they fixed prices by model and make instead of by condition and individual cost of reconditioning. It is urged that a uniform price for each model and make does not allow for varying reconditioning cost. This contention is likewise without merit. Maximum prices of refrigerators, vacuum cleaners, and washing machines were fixed at the levels generally prevailing in the fall of 1941 and early 1942. As we have already stated, each of the regulations gives separate maximum prices for appliances "as is" or "not guaranteed" and for "reconditioned", "rebuilt" or "guaranteed" appliances. In the case of refrigerators and vacuum cleaners separate dollars-and-cents prices are given in this way for each model and make and in the case of washing machines for each class of machine. The margin between the "as is" or "not guaranteed" price on the one hand, and the "reconditioned", "rebuilt" or "guaranteed" price on the other hand, includes as one of its elements an allowance for reconstruction

or reconditioning representing the average cost to the industry, as disclosed by the Administrator's investigation, of reconstructing or reconditioning used appliances of the type and age involved. We think that it was well within the discretion of the Administrator to establish control of the prices of these used appliances upon this basis particularly in view of the insuperable administrative difficulties which would be involved in the alternative suggested by the complainant. For his suggestion is in essence that the Administrator should fix a scale of maximum prices for "as is" used appliances which would exactly reflect the relative value of such appliances in the innumerable stages of depreciation and disrepair in which they are likely to be offered for sale by their owners. It must be remembered that the regulation places no compulsion upon a dealer who is about to purchase a used appliance "as is" for reconditioning and resale to pay the maximum price fixed by the regulation for an "as is" appliance. On the contrary the exercise of the most elementary business judgment certainly requires him to consider the actual condition of the particular appliance, to estimate the cost of reconditioning it, and to determine the price which he is warranted in paying for it in the light of these and all other relevant factors including the maximum price for which he will be permitted to sell it after he has reconditioned it. We conclude that the allegations of paragraphs 2 and 3 of section V of the complaint wholly fail to state facts which would establish that the regulations in question were arbitrary or capricious or not in accordance with law.

The third and last main ground of objection raised by the complainant is that the regulations are not generally fair and equitable. It is asserted in paragraphs 4, 5 and 6 of section V of the complaint that the prices established do not allow for recovery of costs of repairing and materials used; that costs of material, labor and transportation have more than doubled since the date used as a basis for the maximum prices; that the effect of this was to destroy the entire business of dealing in the used articles; and that as a result of the prohibition in the regulation against tie-in sales the cost of doing business was increased because combination selling is necessary in the used furniture business to keep down overhead.

The evidence offered in support of these allegations is insufficient to meet the burden which rests upon the complainant to establish that the regulations are not generally fair and equitable. No offer is made of evidence showing the effect of the regulations on complainant's operations as compared with the results in some representative period before price control. It is settled that a showing of increased costs alone is insufficient.[1] At the very least complainant would be required in order to establish a prima facie case under the burden of proof which rests upon him[2] to present "his own data [as to his costs and earnings] and proving that his operations are substantially representative of the industry and are not in its high cost marginal fringe."[3]

The cost data alleged in subparagraph (7) of paragraph 2 of section V of the complaint with respect to twelve appliances which were involved in the criminal proceeding shed but little light upon the problem. Complainant's real difficulty with the regulations in those transactions was that he purchased the appliances at prices above, in some cases exorbitantly above, the ceiling prices. Insofar as a comparison is possible between complainant's alleged reconditioning costs, on the one hand, and the difference in maximum prices of the articles "as is" and "reconditioned with a guaranty," the difference in almost every case exceeds the alleged costs. Comparison of isolated cases is, however, of little significance. It is the general effect of operations under the regulations which determines their general fairness and equity. On that issue complainant's offers of proof are wholly inadequate to present even a prima facie showing that the regulations are not in accordance with law in this respect.

Nearly all of the allegations of fact set out in support of the objections recited in the remaining paragraphs of section V of the complaint are denied in the answer and the complainant has made no

---

[1] Philadelphia Coke Co. et al. v. Bowles, Em.App.1943, 139 F.2d 349; Gillespie-Rogers-Pyatt Co. Inc., et al. v. Bowles, Em.App.1944, 144 F.2d 361.

[2] Compare Montgomery Ward & Co. v. Bowles, Em.App., 1943, 138 F.2d 669.

[3] Gillespie-Rogers-Pyatt Co. Inc., et al. v. Bowles, Em.App.1944, 144 F.2d 361, 367.

offers of evidence in support 'of them. They must, therefore, be treated as abandoned and need not be considered. It follows that the complainant has wholly failed to establish a right to relief and that the respondent's motion to dismiss the complaint must be granted.

A judgment will be entered dismissing the complaint. A copy of the judgment will be certified to the United States District Court for the Southern District of Indiana.