**TAUB et al. v. BOWLES, Price Administrator.**

**No. 188.**

United States Emergency Court of Appeals.

Heard at Washington Feb. 20, 1945.
Filed June 6, 1945.

Before MARIS, Chief Judge, and LINDLEY and LAWS, Judges.

Irwin Geiger, of Washington, D. C. (Meyer Turin, of Washington, D. C., on the brief), for complainants.

Nathaniel L. Nathanson, Associate Gen. Counsel, of Washington, D. C. (Richard H. Field, Gen. Counsel, John O. Honnold, Jr., Sp. Asst. to Associate Gen. Counsel, and Betty L. Brown, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

LINDLEY, Judge.

Complainants, indicted in the District Court for conspiracy to violate certain reg-

ulations, applied to that court for leave to present to us a complaint objecting to the validity of the regulations. Leave having been granted them to file a complaint "setting forth objections to the validity of" Maximum Price Regulations 193 and 445, they now seek relief in accord with the provisions of Section 204(e) (1) of the Emergency Price Control Act, as amended, 50 U.S.C.A.Appendix, § 924(e) (1).

The complaint asserts that federal regulation of prices of intoxicating liquor conflicts with the Twenty-first Amendment to the Constitution; and, in the alternative, if the regulations are deemed within the federal constitutional power, that intoxicating liquor is not a commodity which Congress intended to be regulated; that such regulation subserves no purpose of the Act, and that the regulations are invalid by reason of failure of the Administrator to obtain approval of the Secretary of Agriculture as required by Section 3, Subsections (a, b, c, d, and e) of the Act, 50 U.S.C.A.Appendix, § 903 (a–e).

The Administrator moved to dismiss, asserting that certain of the objections now presented had not been mentioned in the application to the District Court and are, therefore, not properly cognizable by this court; that the United States has constitutional power to regulate the price of liquor; that liquor is a commodity subject to price control; that it is not an agricultural commodity within the contemplation of Section 3(c) of the Act, requiring approval of the Secretary of Agriculture before prices for such commodities shall be fixed and, finally, that the indictment is not of that character of proceedings defined in Section 204(e) (1) as justifying a complaint in this court.

Section 204(e) (1) provides that, subject to certain conditions, "in any criminal proceeding * * * brought pursuant to section 205 involving alleged violation of any provision of any regulation or order issued under section 2 or of any price schedule effective in accordance with the provisions of section 206, the defendant may apply to the court in which the proceeding is pending for leave to file in the Emergency Court of Appeals a complaint against the Administrator setting forth objections to the validity of any provision which the defendant

is alleged to have violated." Section 205 (b), 50 U.S.C.A.Appendix, § 925 (b), provides that: "Any person who willfully violates any provision of section 4 of this Act, * * * shall, upon conviction thereof, be subject to" a specified fine and term of imprisonment. Respondent insists that Section 204(e) (1), brought into the Act by the Stabilization Extension Act of 1944, endows us with jurisdiction to entertain only a complaint seeking judgment of invalidity of regulations for direct violation of which a prosecution is brought pursuant to Section 205, and not one seeking relief where the charge is conspiracy to commit a violation of regulations under the Criminal Code, 18 U.S.C.A. § 88. The latter, he suggests is not a proceeding charging violation of regulations under Section 4(a), 50 U.S.C.A.Appendix, § 904 (a), which provides that it shall be unlawful "to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity * * * or otherwise to do or omit to do any act, in violation of any regulation or order * * * or to offer, solicit, attempt, or agree to do any of the foregoing."

The debates in Congress and the proceedings of its committees with respect to the amendments of 1944 disclose the matters with which Congress was concerned.[1] Representative Smith said: "A person may be indicted * * * on a regulation that is utterly void. He may be * * * tried * * * and * * * convicted, * * *, yet he can not * * * set up as a defense the invalidity of the regulation." Representative Dilweg inquired: "You mean that if there is an indictment for conspiracy, * * * the court cannot consider the validity of the regulation." Mr. Smith replied in the affirmative. Senator Wagner commented: "The procedure * * * has been made available to avoid the risk of injustice * * * under which a defendant who had excusably failed to file a protest * * * might be denied any opportunity to question the validity of the regulation." In the House it was said further: "This is an opportunity * * * to say whether * * * an aggrieved citizen ought to be able to appeal to some kind of court." "What the committee has done is to provide, that where a man has

[1] Cong.Rec.1944, pp. 5397, 5955, 5956, 6451, 6512. House of Rep. Hearings before Committee on Banking and Currency on H.R. 4376, 78th Cong., 2nd Sess., pp. 1788, 1789, 2029; Report of the Senate Committee on Banking and Currency, 78th Cong., 2nd Sess., Report No. 922, pp. 12–13.

been prosecuted criminally, he may question the legality of the regulation * * *; if the district court decides that his objection is in good faith, the Emergency Court of Appeals will pass upon the legality or illegality." As observed in the writer's concurring remarks in Thomas Paper Stock Co. v. Bowles, Em.App., 148 F.2d 831, decided March 27, 1945, Senator Danaher, after commenting that the Supreme Court, in Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, had remarked that it made no decision on two questions, stated that "in what we have done we have perfected the two points as to which the Supreme Court has entered no decision * * *." Mr. Field, General Counsel for the Administrator, said before the committee: "It is imperative * * * that a man be given an adequate opportunity to challenge the validity of any * * * regulation."

■ We think it obvious, therefore, that Congress had in mind an amendment which would afford an opportunity to every diligent person charged with violating a regulation or with conspiring to violate it, to have a hearing upon the question of validity. But our problem goes further—it involves also the question of whether, in its final enactment, Congress has used language sufficient or appropriate to express an intent to include conspiracy indictments in its provisions for relief. Legislative history may be vitally important in interpretation of ambiguities, but if statutory language is unequivocal and capable of but one meaning, reference to extraneous events occurring during the consideration of proposed legislation, prior to its enactment, is futile, for, notwithstanding apparent resultant hardship or inconsistency, we can not add to or modify the literal mandate of the legislative department. United States v. Missouri Pacific R. R. Co., 278 U.S. 133, 49 S.Ct. 133, 73 L.Ed. 322; Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168; Sturges v. Crowninshield, 4 Wheat. 122, 17 U.S. 122, 4 L.Ed. 529; See also II Sutherland, Statutory Construction, Sec. 4702.

■ Had Congress, in designating those proceedings in which defendants might apply for permission to attack the validity of regulations, been content with the phrase "in any civil or criminal proceeding * * * involving alleged violation of any provision of any regulation or order issued under section 2," it might be argued with plausibility that we should attribute to it an intent to include proceedings in the nature of conspiracies to violate regulations, for the word "involving" possesses connotations such as "implying," "including," "relating to," "growing out of," "[necessitating] as a result or legal consequence."[2] It might well be urged persuasively that the language of the Act quoted should be construed as including all senses commonly attributed to the word "involving" by the courts, including offenses "relating to" or "growing out of" violations of regulations. But the Congress did not stop with the language quoted. It expressly stipulated that the civil and criminal proceedings to which Section 204(e) (1) applies shall be those "brought pursuant to section 205." That section merely authorizes civil and criminal proceedings to be brought for violation of Section 4 which makes it unlawful to violate regulations and orders issued under the Act. Section 205 does not authorize or even refer to prosecutions for conspiracy to commit the offenses defined by Section 4. Conspiracies to commit such offenses are made punishable only by Section 37 of the Criminal Code, 18 U.S.C.A. § 88, commonly known as the Conspiracy Act. It follows, therefore, that a conspiracy prosecution brought under the Conspiracy Act cannot be held to be "brought pursuant to section 205" of the Emergency Price Control Act.

■■ Moreover Congress proceeded to define specifically the relief which the court might grant and the circumstances justifying the relief by these further words "may apply to the court * * * for leave to file in the Emergency Court of Appeals a complaint * * * setting forth objections to the validity of any *provision which defendant is alleged to have violated.*" These words are without ambiguity and

---

[2] Baltimore & O. S. W. R. Co. v. Evans, 169 Ind. 410, 82 N.E. 773, 779; Vilas v. City of Manila, 220 U.S. 345, 31 S.Ct. 416, 55 L.Ed. 491; Reavis v. Fianza, 215 U.S. 16, 30 S.Ct. 1, 54 L. Ed. 72; Miller v. United States, 2 Cir., 24 F.2d 353, at 360; Reusche v. Milhorn, 218 Cal. 696, 24 P.2d 792; Tonini v. Ericcsen, 218 Cal. 39, 21 P.2d 565; Diamond Full Fashioned Hosiery Co. v. Leader, D.C., 20 F.Supp. 467, 469; Hydrox Ice Cream Co. v. Doe, 159 Misc. 642, 289 N.Y.S. 683.

must be given their unequivocal import. Consequently we are without authority to entertain a complaint presenting any subject matter other than "objections to the validity of any provision which" defendants are "alleged to have violated." Here the indictment contained no averment of violation of any regulation but rather only the charge of conspiracy. A conspiracy to commit a crime is a different offense from the crime which is the object of the conspiracy, and a prosecution for conspiracy is not a prosecution under the statute whose violation is its object. United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211; United States v. Hirsch, 100 U.S. 33, 25 L.Ed. 539; United States v. Stevenson, 215 U.S. 200, 30 S.Ct. 37, 54 L.Ed. 157; United States v. McElvain, 272 U.S. 633, 47 S.Ct. 219, 71 L.Ed. 451; Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23.

■■ Complainants suggest that in view of the fact that the Act makes it a crime to agree to violate a regulation, Congress must have intended to eliminate from the scope of the conspiracy statute all such agreements and to substitute, therefor, a prosecution for violation of the Act which includes as a crime an "agreement" to violate. It is further suggested, therefore, that we may treat the indictment as a charge of agreement to violate the regulations thus constituting a charge of violation of the Act, and ignore all other averments as surplusage. But repeals or modifications of statutes must ordinarily be explicit; repeal by implication is not looked upon with favor. We find nothing in the Act, the legislative history or the circumstances of this case, that would justify us in imputing to Congress the far-reaching intent to modify or limit the long existing crime of conspiracy or to forbid its application to conspiracies to violate regulations. Because of the same considerations, we think also that we may not ignore the specific charge of conspiracy in the indictment and construe it as a charge of a substantive offense. We may not legitimately rewrite the grand jury's indictment.

Our conclusion is that Congress has not given us jurisdiction under Section 204(e) (1) to entertain a complaint challenging the validity of a regulation when the charge is conspiracy. Of course we would have jurisdiction to review the validity of the regulation under Section 204(a)

after denial of a protest filed pursuant to Section 203, 50 U.S.C.A.Appendix, § 923. But here our jurisdiction has not been invoked in that way.

However, in view of the fact that it is possible that upon review the Supreme Court may conclude that we are in error in declining jurisdiction and direct us to dispose of the question of validity, we deem it wise now to state our conclusions upon the merits of the objections urged to the regulations and thus to make unnecessary any possibility of a second hearing and disposition.

■ As respondent urges, complainants may not legitimately attack the regulations on grounds other than those which were presented in their application to the District Court and which that court has granted leave to present to us. Fournace v. Bowles, Em.App., 148 F.2d 97, decided March 15, 1945. Unfortunately, however, we are uncertain here as to just what the District Court meant to do in this respect. Because of the absence of the judge who had heard the application, the formal order was entered by another judge. It granted leave to file in this court a complaint "setting forth objections to the validity of the regulation." The transcript is devoid of showing as to what transpired at the hearing, whether complainants orally asked leave to present all of the grounds for attack which they have included in their complaint or whether the court considered the good faith of each of the objections now presented.

It is perhaps not amiss to reiterate that Section 204(e) (1) provides that indicted persons may apply for leave to file in this court a complaint setting forth objections to the validity of any regulation which they are alleged to have violated. The court may grant leave with respect to any objection which it finds is made "in good faith" and as to which it finds also that reasonable or substantial excuse exists for failure to present such objection in a protest under Section 203(a). This Act imposes upon the District Court a duty to examine each objection urged and to determine whether it is made in good faith and whether failure to protest previously should be excused. Under the mandate of Congress, disposition of the application entails the exercise of judicial discretion.

We do not recede from our announcement in Fournace v. Bowles, supra, con-

cerning the limited scope of our review under complaints under Section 204(e) (1), but, in view of the lack of earlier interpretation of the statute and our uncertainty as to what the District Court intended complainant should be permitted to present, we have thought it well, under the specific circumstances presented, to examine each objection urged.

■■■■ Complainants contend that, by virtue of the Twenty-first Amendment, the states are now endowed with exclusive right to regulate liquor traffic and that federal agencies, therefore, are precluded from establishing and enforcing maximum prices for liquor. True, the states may adopt measures reasonably appropriate to effectuate their full police control over traffic in liquor, Ziffrin v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128; Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424, but this is not to say that the federal government has relinquished its right to enforce its constitutional powers through appropriate regulation. Though the national government is one of limited powers, those actually granted constitute the paramount authority of the land. Thus, in Jatros v. Bowles, 6 Cir., 143 F.2d 453, the court, though recognizing that since the Amendment the states are free to enact police laws with regard to liquor within their respective territories, declared that the government is not thereby deprived of its authority to legislate within its constitutional powers, such as the authority to protect the national revenue, the postal service, and interstate commerce and the power to prohibit unfair trade practices in the liquor industry, to regulate liquor traffic tariffs through orders of the Interstate Commerce Commission, to forbid unfair labor practices affecting commerce in intoxicants by brewers or distillers, or to prescribe minimum wages of employees engaged in the industry under the Fair Labor Standards Act. We agree and believe similarly that the amendment works no deprivation of power of the government to enact legislation under the war powers of the United States, including emergency price legislation affecting liquor as a commodity. To read into the Amendment a loss of all federal power over liquor is to interpolate into it a provision that since its adoption the federal government is without authority, so far as intoxicants are concerned, to exercise its revenue, commerce, war or other recognized constitu-

tional functions. This we think obviously fallacious. Indeed, the Supreme Court, in Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189, went so far as to say that an attack upon the constitutionality of federal revenue legislation concerning intoxicating liquor is "without substance." See also Arrow Distilleries, Inc. v. Alexander, 7 Cir., 109 F.2d 397, certiorari denied 1940, 310 U.S. 646, 60 S.Ct. 1095, 84 L.Ed. 1412; Hayes v. United States, 10 Cir., 112 F.2d 417; Hastings v. United States, 8 Cir., 115 F.2d 216; Washington Brewers' Institute v. United States, 9 Cir., 137 F.2d 964, certiorari denied 320 U.S. 776, 64 S.Ct. 89, 88 L.Ed. 465; United States v. Colorado Wholesale Wine & Liquor Dealers Ass'n, D.C.Colo.1942, 47 F. Supp. 160.

■■■■ Complainants insist that intoxicating liquor is not a commodity within the intent of the Emergency Price Control Act. Section 2(a), 50 U.S.C.A.Appendix, § 902 (a), grants the Administrator power to establish maximum prices for a "commodity or commodities," defined in Section 302(c), 50 U.S.C.A.Appendix, § 924(c), as "commodities, articles, products, and materials." The Act contains no limitation upon the term; intoxicating liquor, though not specifically included is not excepted. The Congressional definition encompasses "all things possessing the attribute of tangible existence, i.e., all space-displacing objects, which are the subject of barter, transfer, sale, or other transactions involving the exchange of money or other value." Lincoln Savings Bank of Brooklyn v. Brown, Em. App.1943, 137 F.2d 228, 230. We think liquor clearly within the term commodity.

■■■■ A closely allied complaint is that regulation of prices of liquor serves none of the purposes intended to be effectuated by the Act. Despite the insufficiency of this averment because of its generality, (Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; Southern Railway Company v. King, 217 U.S. 524, 30 S.Ct. 594, 54 L.Ed. 868; Rule 11(c) of this court, 50 U.S.C.A.Appendix following section 924), we have examined it and find it without merit. The first objective of the Act, as stated in Section 1(a), 50 U.S.C.A.Appendix, § 901(a), is to stabilize prices. We have declared it entirely realistic when inflationary pressure enters upon the stage as a major force affecting the public economy.

to refuse to except the price of liquor or of any other single commodity from others and to refuse to treat any commodity as located in an economic vacuum removed from other human transactions on the ground that it constitutes no threat of an inflationary increase in prices. In achieving stabilization, the price of any and every commodity freely and openly dealt in is a factor affecting results. The omission of one or more articles, whatever their character, may upset the entire plan. "If and when an inflationary movement reaches the point where it can fairly be said that inflationary pressures have so permeated the price structure that there exists in the case of substantially all commodities a threat of price increases which if permitted to take place will have an inflationary effect, all further price increases of all commodities are to be regarded as abnormal within the meaning of the act and are, therefore, subject to regulation." Philadelphia Coke Company v. Bowles, Em.App., 139 F.2d 349, 353. See also Lincoln Savings Bank of Brooklyn v. Brown, Em.App., 137 F.2d 228.

 In order to sustain complainants' assertion that the regulations are invalid because the Administrator did not obtain the approval of the Secretary of Agriculture prior to their issuance, we would be forced to assume that distilled liquors are agricultural commodities which, under Section 3 of the Act, are excluded from regulation except as approved by the Secretary of Agriculture. Such an assumption does violence to the fact; liquor is not an agricultural commodity. It is rather a commodity processed or manufactured in whole or in substance, specifically distinguished from agricultural commodities in Section 3(c) of the Act. Any shadow of doubt as to this is dispelled by the legislative history,[3] which reveals that the Congress,

by the term agricultural commodity, referred to raw materials produced on the farm as distinguished from processed or manufactured goods. When it entered the field of refined, manufactured or processed commodities it applied appropriate terms to describe them.

Judgment will enter dismissing the complaint.

LAWS, Judge (dissenting in part).

I dissent from that part of the opinion which holds that this Court is without jurisdiction to entertain the complaint because the prosecution against complainants was not for violation of a regulation issued under the Emergency Price Control Act of 1942 and was not brought pursuant to Section 205 of that Act. The Act[1] and the Regulations[2] prohibit "agreements" to sell in excess of established ceiling prices, as well as sales in excess of ceiling prices. The indictment in this case alleges that the defendants did "conspire, combine, confederate, and *agree* * * * To sell and deliver * * * domestic distilled spirits * * * in violation of Section 4(a) of the Emergency Price Control Act of 1942 and regulations issued by the Administrator of the Office of Price Administration under authority of said act * * * at prices that were to be in excess of the maximum prices authorized by the provisions of the Emergency Price Control Act of 1942 and the provisions of Maximum Price Regulation 193 Section 1420.13 * * *." (Italics supplied).

This language, it seems to me, requires our finding that the indictment and the proceedings under it were brought pursuant to Section 205 for violation of the Act and the regulations. The indictment charges expressly that the defendants violated regulations promulgated by the Administrator by agreeing to sell in excess of established

3 Cong.Rec., Jan. 9, 1942, p. 187. See also Sen.Rep. No. 931 (77th Cong. 2d. Sess.) p. 13; Cong.Rec., Jan. 7, 1942, p. 70; Jan. 8, 1941, p. 122; Jan. 26, 1942, p. 697.

1 § 4(a): "It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity * * * in violation of any regulation * * * or to offer, solicit, attempt, or *agree* to do any of the foregoing." (Italics supplied).

2 Maximum Price Regulation No. 193, § 1420.1: "On and after August 5, 1942, regardless of any contract, agreement, lease or other obligation, no person shall sell or deliver domestic distilled spirits * * * at prices higher than the maximum prices set forth in Appendix A hereof, incorporated herein as § 1420.13; and no person shall *agree*, offer, solicit, or attempt to do any of the foregoing." (Italics supplied).

A similar provision appears in § 7.8 of Maximum Price Regulation No. 445.

ceiling prices. An intention to charge a violation of the regulations and the Act is further indicated by the endorsement on the indictment, signed by the United States Attorney and the foreman of the Grand Jury, which states that the indictment is for "Violation of Emergency Price Control Act of 1942, Section 4(a) selling distilled spirits over ceiling prices * * *." Since the District Judge, on the basis of the indictment, granted leave to file the complaint now before us and since under Section 204(e) (1) of the Act[3] leave to file a complaint in the Emergency Court of Appeals is permitted to be granted only against provisions of a regulation which a defendant is alleged to have violated, it is apparent that the District Court, the tribunal which will pass upon the guilt or innocence of the defendants, is also of opinion that the indictment charges violation of a regulation.

I recognize the correctness of the majority view that a conspiracy to violate a regulation is a separate offense from that of violating the regulation. Moreover, it is undoubtedly true that the indictment against complainants charges conspiracy in addition to the violations which I find charged in it. I have no doubt, however, that under the indictment it would be possible for defendants (for example, in the absence of proof of the overt acts charged) to be found guilty of violating the regulations. In my view this is ample support for our making a judgment which the District Court has in effect requested, and for our leaving to the District Court ultimate determination of the significance, of our judgment in the case before it.

Failure of the United States Emergency Court of Appeals to take jurisdiction to decide the validity of the regulations in the case before us will deprive complainants of a possible defense to criminal charges. The language of the Stabilization Extension Act of 1944 does not compel such a result. Its legislative history, as is well established by the majority opinion of this Court, is directly to the contrary. I therefore am of opinion this Court should determine the merit of complainants' objections to the validity of the regulations involved in the indictment not by way of obiter dictum, as is done in this case, but by the final judgment entered by the Court.

[3] § 204(e) (1): "Within thirty days after arraignment, or such additional time as the court may allow for good cause shown, in any criminal proceeding * * * brought pursuant to section 205 involving alleged violation of any provision of any regulation * * * the defendant may apply to the court in which the proceeding is pending for leave to file in the Emergency Court of Appeals a complaint against the Administrator setting forth objections to the validity of any provision which the defendant is alleged to have violated. * * * Upon the filing of a complaint pursuant to * * * such leave, the Emergency Court of Appeals shall have jurisdiction to enjoin or set aside in whole or in part the provision of the regulation * * * complained of * * *."