PACIFIC STATES BOX & BASKET CO. *v.* WHITE ET AL.

No. 48.   Argued October 25, 1935.—Decided November 18, 1935.

*Mr. Arthur A. Goldsmith,* with whom *Mr. Byron C. Hanna* was on the brief, for appellant.

*Mr. Willis S. Moore,* Assistant Attorney General of Oregon, with whom *Mr. I. H. Van Winkle,* Attorney General, was on the brief, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This suit was brought in the federal court for Oregon, in May, 1934, to enjoin enforcement of an order of the Department of Agriculture of that State, dated May 3, 1933, entitled " Standard Containers for Fruits and Vegetables." [1] The plaintiff, Pacific States Box & Basket Company, is a California corporation which manufactures there fruit and vegetable containers. The defendants are the Director of Agriculture and the Chief of the Division of Plant Industry, of Oregon. The jurisdiction of the District Court was invoked both on the ground of diversity of citizenship and on the ground that the order, and the statutes purporting to authorize it, violate rights of the plaintiff guaranteed by the Federal Constitution. The case was heard upon plaintiff's motion for a preliminary injunction and defendants' motion to dismiss the bill on the ground that it does not state facts sufficient to entitle the plaintiff to relief. The court denied the injunction and dismissed the bill. 9 F. Supp. 341.

Oregon Code of 1930, §§ 18–2902 and 18–2903, as amended by Oregon Laws 1931, c. 136, and 1933, c. 225, authorize the Chief of the Division of Plant Industry, after investigation and public hearing and subject to the approval of the Director of Agriculture, to fix and promulgate " official standards for containers of horticultural products " " in order to promote, protect, further and develop the horticultural interests " of the State. After a standard

---

[1] The same provision concerning containers for strawberries is incorporated also in an order dated June 1, 1933; and the prayer for an injunction extends likewise to that order.

has been prescribed, these statutes make it unlawful for anyone to pack for sale or transport for sale, or sell, the article in a container unless it conforms to the standard. They make any violation of the order a misdemeanor, and charge the Director with the duty of enforcement.

The order challenged, so far as it prescribes containers for raspberries and strawberries, is:

"As provided for in sections 18–2902 and 18–2903, Oregon Code 1930, and chapter 136, Oregon Laws, 1931, a public hearing was held in Portland, Oregon, on the date of April 15, 1933, to consider standard containers for fruits and vegetables. Containers for the following fruits and vegetables were considered and recommended:

Raspberries.

Crate—24-pint hallocks, . . . Size of hallock, 2 x 5¼ x 5¼ inches outside measurements, bottom set up ¾ inch, inside depth 1¼ inches.

Strawberries.

Crate—24-pint hallocks, . . . Size of hallocks, 2½ x 4⅜ x 4⅜ inches outside measurements, bottom set up ¾ inch, inside depth 1¾ inches.

. . . the above-mentioned containers are hereby declared to be standard for the designated fruits and vegetables and this order shall become effective on June 15, 1933. Provided, however, that persons now having on hand new containers or shooks for same not of standard sizes as hereby approved will be allowed an extension of time until January 1, 1934, in order to make use of such material."

A hallock is a type of rectangular till box with perpendicular sides and a raised bottom. It is usually made of rotary cut veneer, taken directly from spruce logs; but is sometimes made of paper or other material.

The plaintiff manufactures a type of container other than hallocks. Its type, which is also used for rasp-

berries and strawberries, is known as tin-top or metal rim. It differs from the hallock both in shape and construction. In shape, it is more like a cup; its sides slope outward; and it has not the raised bottom. This cup is made from two thin strips of wood crossing each other to form the bottom of the container and then bent upward to form the sides, reinforced with a narrow metal strip to insure protection of the cup and its contents, as well as to insure uniformity of cubic measure. The plaintiff has for years sold a part of its product of tin-top cups to dealers in Oregon, for ultimate use as containers for raspberries and strawberries to be packed there.

The bill alleges " that the effect " of the order is to prevent the sale by plaintiff for use in Oregon of " the metal top variety of containers or cups with the solid bottom "; " because dealers who formerly purchased such baskets from Plaintiff have been warned by officials . . . that they would not be allowed to sell strawberries or raspberries in any container " other than that prescribed; that it has no facilities for manufacturing hallocks; and that, because of the expense of installing the requisite machinery and the cost of transporting the appropriate supplies to its plant, it is impracticable for it to arrange to make hallocks.

The claim is that, since the order prescribed hallocks as the only permissible type of container, its necessary effect is to exclude containers of the plaintiff's manufacture from use in Oregon, and, therefore, the order violates its rights: (a) Under the due process clause of the Fourteenth Amendment, because the order is arbitrary, capricious, and not reasonably necessary for the accomplishment of any legitimate purpose of the police power; (b) Under the equal protection clause of the Amendment, because the order grants a monopoly to manufacturers of hallocks; (c) Under the commerce clause, because the order imposes undue burdens on interstate commerce. The defend-

ants insist that the order is an appropriate exercise of the police power of the State; does not create a monopoly; and does not burden interstate commerce. We think the defendants are right.

*First.* The power of a State to prescribe standard containers in order to facilitate trading, to preserve the condition of the merchandise, to protect buyers from deception, or to prevent unfair competition is conceded. Such regulation of trade is a part of the inspection laws; was among the earliest exertions of the police power in America; has been persistent; and has been widely applied to merchandise commonly sold in containers. See *Turner* v. *Maryland,* 107 U. S. 38, 51–54. Latterly, with the broadening of the field of distribution and the growing use of containers in the retail trade, the scope of the regulation has been much extended.

Plaintiff does not question the reasonableness of the standard so far as it prescribes the capacity of the box or basket. Its challenge is directed solely to the fixing of the dimensions and the form of the container. But to fix both the dimensions and the form may be deemed necessary in order to assure observance of the prescribed capacity and to effect other purposes of the regulation. It may be that in Oregon, where hallocks have long been in general use,[1] buyers at retail are less likely to be deceived by dealers as to the condition and quantity of these berries if they are sold in containers of the prescribed form and dimensions. It is said that there are 34 other styles or shapes of berry basket in use somewhere in the United States. Obviously, a multitude of shapes and sizes of packages tends to confuse the buyer. Furthermore, the character of the container may be an important factor in preserving the condition of raspberries and strawberries, which are not only

---

[1] See " Containers used in Shipping Fruits and Vegetables," U. S. Department of Agriculture, Farmers' Bulletin No. 1579 (1934) pp. 7–9.

perishable but tender. A shallow container, like the hallock prescribed, may conceivably better preserve these fruits than the deeper cup which the plaintiff manufactures. A container with perpendicular sides, like the hallock, may conceivably preserve them better than a metal-rim cup with outward sloping sides. And, since the containers are to be packed and shipped in crates of 24, the berries may conceivably be better stowed where the fruit basket has the bottom set-up peculiar to the hallock, than if it had the flat bottom of the plaintiff's metal-rim cup. Considerations of this nature led the Colonies, the individual States, and Congress to prescribe for many articles not only the capacity, but the size and form of containers.[2]

Different types of commodities require different types of containers; and as to each commodity there may be reasonable difference of opinion as to the type best adapted to the protection of the public. Whether it was necessary in Oregon to provide a standard container for raspberries and strawberries; and, if so, whether that adopted should have been made mandatory, involve questions of fact and of policy, the determination of which rests in the legislative branch of the state government. The determination may be made, if the constitution of the State permits, by a subordinate administrative body. With the wisdom of such a regulation we have, of course, no concern. We may enquire only whether it is arbitrary or capricious. That the requirement is not arbitrary or capricious seems clear. That the type of container prescribed by Oregon is an appropriate means for attaining permissible ends cannot be doubted.

*Second.* The standard prescribed by the order does not conflict with any established by Congress. The Standard Baskets and Containers Act of May 21, 1928, c. 664, 45 Stat. 685, has no relation to the matter here under con-

_____
[2] See *Turner* v. *Maryland,* 107 U. S. 38, notes pp. 51–54.

sideration. That statute deals solely with hampers, round stave, and splint baskets of capacity not less than one-eighth bushel. The Standard Baskets and Containers Act of August 31, 1916, c. 426, 39 Stat. 673, which in § 2 deals with containers for small fruits and vegetables, prescribes merely the capacity of the containers. It fixes the cubic contents for dry half-pint, pint, and quart. It makes no reference to the dimensions or form of the container; and has left to the individual States the adoption of the standards in these respects if deemed necessary. Compare *Savage* v. *Jones,* 225 U. S. 501; *Merchants Exchange* v. *Missouri,* 248 U. S. 365, 368; *Mintz* v. *Baldwin,* 289 U. S. 346, 350, 351.

*Third.* The charge that the order is void because it grants a monopoly to manufacturers of hallocks is unfounded. The plaintiff, and all others, are free to engage in the business, which, so far as appears, is not protected by patent or trademark and does not rest upon trade secrets. The business is not closely controlled; nor is it peculiar to Oregon. In 1933, at least 25 concerns were engaged in the United States in manufacturing hallocks. Less than one-fourth of them were located in Oregon and Washington.[3] Plaintiff asserts that the order excludes it from the Oregon trade since its plant cannot be equipped to manufacture hallocks except at a prohibitive cost; and that the spruce logs, the veneer of which is customarily used in making hallocks, are not obtainable except in the Pacific Northwest. Obviously these allegations afford no support to the charge of monopoly; among other reasons, because the order does not prescribe the material from which hallocks may be made. They are

[3] See " Production and Carry-over of Fruit and Vegetable Containers for the Year 1933," U. S. Department of Agriculture, Bureau of Agricultural Economics, pp. 3, 7, 16, 19, 22; *ibid.* for 1934, pp. 2, 6. Compare U. S. Department of Agriculture, Farmers' Bulletin No. 1579, pp. 7–9.

in fact made, to some extent, from material other than spruce veneer. Moreover, the grant of a monopoly, if otherwise an appropriate exercise of the police power, is not void as denying equal protection of the law. Compare *Slaughter-House Cases,* 16 Wall. 36; *Nebbia* v. *New York,* 291 U. S. 502, 529.

*Fourth.* The order does not unduly burden interstate commerce. It is aimed, not at the importation or sale of other types of containers, but at their use in Oregon by packers of raspberries and strawberries, and the later transportation and sale of the packages. The prohibition of other types involved in prescribing the standard is nondiscriminatory. It applies regardless of the origin of the containers. The plaintiff is a manufacturer of containers, not a packer or shipper of berries. It is not prohibited from shipping its tin-top containers into Oregon; nor from selling them there. The operation of the order is intrastate, beginning after the interstate movement of the containers has ceased, and after the original package has been broken. To sustain this contention of the plaintiff would be to hold that its containers, because of their origin, are entitled to immunity from the exercise of the state regulatory power. Compare *Packer Corporation* v. *Utah,* 285 U. S. 105, 111–112.

*Fifth.* Plaintiff contends that since the case was heard on motion to dismiss the bill, all allegations therein made must be accepted as true; and, among others, the charge that " there is no necessity for the particular orders relating to strawberries or raspberries " " based on considerations of public health, or to prevent fraud or deception, or any other legitimate use of the police power, and the particular container described . . . does not of necessity promote, protect, further or develop the horticultural interests of the State "; and that its necessary effect is " to grant a monopoly to manufacturers of the so-called hal-

locks." The order here in question deals with a subject clearly within the scope of the police power. See *Turner v. Maryland*, 107 U. S. 38. When such legislative action " is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary." *Borden's Farm Products Co.* v. *Baldwin*, 293 U. S. 194, 209. The burden is not sustained by making allegations which are merely the general conclusions of law or fact. See *Public Service Comm'n* v. *Great Northern Utilities Co.*, 289 U. S. 130, 136, 137. Facts relied upon to rebut the presumption of constitutionality must be specifically set forth. See *Aetna Insurance Co.* v. *Hyde*, 275 U. S. 440; *O'Gorman & Young* v. *Hartford Fire Insurance Co.*, 282 U. S. 251; *Hegeman Farms Corp.* v. *Baldwin*, 293 U. S. 163. A motion to dismiss, like a demurrer, admits only facts well pleaded. Compare *St. Louis, Kennett & Southeastern R. Co.* v. *United States*, 267 U. S. 346, 349.

*Sixth.* It is urged that this rebuttable presumption of the existence of a state of facts sufficient to justify the exertion of the police power attaches only to acts of legislature; and that where the regulation is the act of an administrative body, no such presumption exists, so that the burden of proving the justifying facts is upon him who seeks to sustain the validity of the regulation. The contention is without support in authority or reason, and rests upon misconception. Every exertion of the police power, either by the legislature or by an administrative body, is an exercise of delegated power. Where it is by a statute, the legislature has acted under power delegated to it through the Constitution. Where the

regulation is by an order of an administrative body, that body acts under a delegation from the legislature. The question of law may, of course, always be raised whether the legislature had power to delegate the authority exercised. Compare *Panama Refining Co.* v. *Ryan,* 293 U. S. 388 and *A. L. A. Schechter Poultry Corp.* v. *United States,* 295 U. S. 495. But where the regulation is within the scope of authority legally delegated, the presumption of the existence of facts justifying its specific exercise attaches alike to statutes, to municipal ordinances, and to orders of administrative bodies. Compare *Aetna Insurance Co.* v. *Hyde,* 275 U. S. 440, 447. Here there is added reason for applying the presumption of validity; for the regulation now challenged was adopted after notice and public hearing as the statute required. It is contended that the order is void because the administrative body made no special findings of fact. But the statute did not require special findings; doubtless because the regulation authorized was general legislation, not an administrative order in the nature of a judgment directed against an individual concern. Compare *Wichita Railroad & Light Co.* v. *Public Utilities Comm'n,* 260 U. S. 48, 58–59; *Mahler* v. *Eby,* 264 U. S. 32, 44; *Southern Ry. Co.* v. *Virginia,* 290 U. S. 190, 193, 194.

*Seventh.* It is argued that under the constitution of Oregon, its legislature was without power to delegate the authority to prescribe standard containers, citing *Van Winkle* v. *Fred Meyer, Inc.,* 151 Ore. 455; 49 P. (2d) 1140. This objection (which involves solely a question of state law) was not made below, was not discussed by the lower court, and is not included in the assignment of errors filed in this Court. We have no occasion to consider it. See Rule 27 (4); *Blair* v. *Oesterlein Co.,* 275 U. S. 220, 225; *Bradley* v. *Public Utilities Comm'n,* 289 U. S. 92, 96–7.

*Affirmed.*