## WILKERSON v. MONTGOMERY.
### No. 364.

Municipal Court of Appeals for the District of Columbia.
April 26, 1946.

---

George E. C. Hayes, of Washington, D. C. (Cobb, Howard and Hayes, of Washington, D. C., on the brief), for appellant.

Dewey M. Carr, of Washington, D. C. Penn, Carr & Bowles, of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

The plaintiff below sued her landlord for an alleged violation of a maximum rent ceiling and sought judgment for double the excess charge under the provisions of Section 10(a) of the District of Columbia Emergency Rent Act. Code 1940, 45—1610 (a).

The tenant took possession under a written lease dated November 1, 1944. The case was tried below and argued here on the basis that at and prior to the commencement of the tenancy there was no rent ceiling on the accommodations either by operation of law or by determination of the Rent Administrator. Although the record does not contain facts affirmatively establishing this basis, we accept it in our consideration of the case.

On April 12, 1945, the Rent Administrator entered an order determining maximum rent ceilings for the various units in the building, including those occupied by plaintiff. The ceilings so determined were based upon a minimum service standard which included, among other things, furniture and furnishings. The ceiling for plaintiff's accommodations, described in the order as unit 6 & 7 "combination" was fixed at $60. Ceilings for units 6 and 7 separately were fixed at $35.

Plaintiff's action was commenced May 29, 1945, apparently on the assumption that her accommodations constituted unit 6, for which the ceiling was $35 and for which she had paid $90, and that she had been overcharged $55 a month for a period of seven months. Accordingly, she asked judgment for double the overcharge, or $770.

It developed at the trial that the actual numbering of the units did not correspond with the units as numbered in the Administrator's order, and that the unit occupied by plaintiff was unfurnished, though the rent ceiling was based on furnished quarters; and counsel for the Rent Administrator, a witness for the plaintiff, stated that in view of the disclosure the Administrator would reconsider his previous order. Thereupon, according to the record, "the cause of action was abated for the purpose of resubmission to the Office of the Administrator of Rent Control."

Thereafter the Rent Administrator on July 24, 1945, entered an order determining the rent ceilings for the various units, in which plaintiff's accommodations, described as unit 6 & 7, "two rooms and kitchen," were given a rent ceiling of $60 furnished and $40 unfurnished. Thereafter, the trial court entered judgment for plaintiff in the amount of $420. This amount apparently was calculated by finding an overcharge of $30 a month for the period of seven months and doubling that amount. How-

ever calculated, the amount could have been reached only by giving a retroactive effect to the Rent Administrator's determination of either April or July, and to do so would be contrary to previous decisions of this court.

In Moore v. Coates, D.C.Mun.App., 40 A.2d 68, 72, this court considered the effect of a determination of a rent ceiling by the Administrator, where there was no previously existing ceiling, and reached the following conclusion: "We are of the opinion that no maximum rent ceiling existed until determined by the Administrator, and that until then the rights of the parties were those fixed by their lease agreement." The United States Court of Appeals (No. 8918)[1] denied an appeal in that case. In Dekelbaum v. Lloyd, D.C. Mun.App., 41 A.2d 174, we adhered to our ruling in Moore v. Coates, and again the United States Court of Appeals (No. 8928)[1] denied an appeal. In its recent decision in Delsnider v. Gould, 154 F.2d 844, decided March 25, 1946, the United States Court of Appeals in substance approved this court's ruling in Moore v. Coates, saying: "the maximum rent ceiling * * * was the rent payable under the lease * * * until the order of the Administrator * * * and thereafter was the amount found by him * * *."

Since the determinations of the Rent Administrator have no retroactive effect, it is plain that the order of July 24 has no bearing on the issues in the present case which involved collections prior to the filing of the action on May 29. Even if we assume that, because the April order was entered on a misunderstanding or mistake of fact, the July order could have been made effective as of the date of the April order, it does not purport to void or even modify the April order. It plainly states that its determination of rent ceilings is of the July date.

This leaves for consideration only the order of April 12. Since the rent was payable monthly in advance on the first day of the month, in the absence of a contrary showing we assume the April rent had been paid prior to the Administrator's order of April 12. Therefore, receipt of rent on April 1 was not a violation of the ceiling established on April 12.

It follows that the only month for which there could be a violation was that of May. When the May rent was paid there had been established a rent ceiling of $60 for plaintiff's accommodations. It is true that the ceiling was for furnished quarters, and, according to the record, plaintiff "had exercised her privilege of bringing into the furnished quarters her own furniture." The meaning of this statement of the record is not clear, but assuming that the quarters were rented as furnished and plaintiff declined the use of the furniture, we see no violation of the rent ceiling where the tenant for purposes of her own declines a service to which she is entitled. If we hold that the ceiling for the accommodations with furniture has no application to the quarters unfurnished, then we would have to hold that there was no ceiling on plaintiff's quarters, because the April order fixed no ceiling on unfurnished quarters. In this situation we think the order of April 12, fixing a ceiling on plaintiff's accommodations at $60 per month controls, and that there was an overcharge of $30 for the month of May. Our conclusion is that the plaintiff was entitled to a judgment for double the overcharge, that is, for $60.

The tenant says that the landlord failed to comply with the Administrator's General Order No. 11, effective November 30, 1943, which requires the immediate filing of applications for determination of rent ceilings and further provides that: "For all such housing accommodations not now rented, such an application shall be filed before any future tenancy begins." And the tenant argues that unless a retroactive effect is given to the determination, the landlord will be permitted to gain advantage by his disregard of the Administrator's general order. While, as we have held, there can be no violation of a rent ceiling until such ceiling is established, this does not mean that a landlord with impunity may ignore valid orders and regulations of the Administrator. Section 10(b)

---

[1] No opinion.

of the Rent Act, Code 1940, 45—1610(b), specifically provides for criminal prosecution of "any person who willfully violates any provision of this Act or any regulation, order, or requirement thereunder."

Judgment below will be modified by reducing its principal sum to $60, and as so modified affirmed.

CAYTON, Chief Judge.

Having dissented in Moore v. Coates, I think I should say that I recognize that the principle of that decision has since been upheld by the United States Court of Appeals in Delsnider v. Gould, 154 F.2d 844, decided March 25, 1946. Accordingly, I join in the opinion of the court in this case.