REYNOLDS et al. v. KORMAN et al.

SUGRUE et al. v. GLOVER PARK TERRACE, Inc. et al.

No. 1308.

Municipal Court of Appeals for the District of Columbia.

Argued March 23, 1953.

Decided May 8, 1953.

---

Thomas B. Scott, Washington, D. C., with whom Lawrence J. Simmons, Washington, D. C., was on the brief, for petitioners. ·

Ernest F. Williams, General Counsel, Washington, D. C., with whom Ruffin A. Brantley, Asst. General Counsel, Washington, D. C., was on the brief, for Robert F. Cogswell, Administrator of Rent Control.

Jacob Permut, Washington, D. C., for respondents Korman and Glover Park Terrace, Inc.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Some eighty-five tenants who lived in defendant's apartment buildings filed petitions with the Office of the Rent Administrator seeking adjustments in rent and

service.[1] The petitions alleged: That the permissible rent was, due to peculiar circumstances, substantially higher than rent generally prevailing for comparable housing accommodations; that the services supplied were less than the services which should have been supplied under the minimum-service standards; and that the applicable rent ceilings permitted the receipt of unduly high rents. The petitions specifically alleged such things as lack of heat, lack of hot water, venetian blinds and plumbing out of repair, diminution of laundry and recreational facilities, seedy appearance of halls and buildings in general, poor janitor service, cracks in walls and ceilings left unrepaired, etc. It was also contended that a rent increase of 2 percent per calendar year had not been determined by using the proper basis as provided by law; that taxes charged to petitioners were not properly apportioned; and that there had been improper and inadequate notice of rent increases given by the landlord as provided by agreement between the landlord and petitioners and/or by law.

The petitions came on for hearing before an examiner and evidence was presented by both sides. Thereafter the examiner issued findings and recommended orders which after review, were adopted as the findings and orders of the Rent Administrator.

At the outset we must consider a jurisdictional question: landlord's claim that the appeal was filed late. This claim is based on the section of the Rent Act which provides that within ten days of the service of examiner's findings and recommended order, a party may request that such be reviewed by the Administrator, and that if there is no such request within such ten day period the findings and recommended order of the examiner shall be deemed to be the findings and the order of the Administrator. Code 1951, Supp. I, § 45-1608(c). A petition for review of the Administrator's order must be filed in this court within ten

days after the date of such order. Code 1951, Supp. I, § 45-1609(a).

The examiner's findings and recommended orders were made on January 8, 1952. On January 18, 1952, petitioners filed a multi-purpose motion for a rehearing before the examiner, to have the examiner clarify his findings and recommended orders and make further findings and orders as urged by the petitioners. This motion was denied by the examiner on February 6, 1952, and petitioners filed a petition for review by the Administrator on February 12, 1952.[2] The Administrator's final order was entered December 24, 1952.

Landlord's position is that unless a petition for review by the Administrator is filed within ten days of receipt of the examiner's findings and recommended order then such findings and order automatically become those of the Administrator, from which an appeal to this court must be made within ten days. Despite the pendency of the motion before the examiner, respondents contend the examiner's findings and recommended orders became those of the Administrator on January 18, 1952, that the ten day period for an appeal to this court expired January 28, 1952, and that the petitions filed in this court January 3, 1953 were nearly a year too late.

Landlord overlooks the fact that under the Rent Act hearings are to be conducted in accordance with regulations of the Administrator.[3] Regulation 20 of the Administrator expressly provides that a party may seek further proceedings by the examiner prior to the effective date of the examiner's recommended order. When such a request is filed, the effective date of an unchanged order is extended to the fifth day after the disposition of the request. A petition for review by the Administrator may then be filed within that five day period. The record discloses that petitioners' motions for rehearing and for a review by the Administrator were filed within the times

---

1. Only two of these petitions, designated as typical, are included in the record. For convenience, we shall have occasion to refer to the petitions by the Rent Administrator's case numbers.

2. February 10, 1952 fell on a Sunday and therefore is not to be counted in the computation of time. Regulation 11, Rules and Regulations of the Administrator.

3. Code 1951, Supp. I, § 45-1608.

permitted by the regulations.[4] It also discloses that the petition for review was filed in this court within ten days after the Administrator's final order. Accordingly we rule that petitioners were not late in filing their appeal.

Petitioners' first claim of error is that the examiner arbitrarily required the hearing to proceed throughout the day and evening, from 9 a. m. until 12:15 the following morning with only a short recess or two and a break of about forty-five minutes in the early afternoon, and with no recess for dinner.[5] Several years ago in a jury case we said, "we cannot approve a practice which would hold parties and counsel in court for long hours without a recess and past the dinner hour." Shapiro v. Vautier, D.C.Mun.App., 36 A.2d 349, 351. But we said that the matter was in the realm of discretion. Generally the same considerations should govern administrative proceedings. We should be slow to attach blame to an examiner willing to expedite a case by sitting late into the night, for such an attitude tends to still complaints about the law's delays. On the other hand no hearing should be so protracted and intensive as to detract from the calm and patient approach which should attend all judicial and quasi-judicial hearings. Sound discretion will usually suggest the course to be followed.

In Jennings v. Gilbertson, D.C.Mun.App., 74 A.2d 839, we ruled that it was not reversible error for a rent examiner to refuse a continuance of a hearing. Here no continuance was asked, no protest was made against the lengthy session, no dinner recess was requested, and we may reasonably infer from the record that petitioners acquiesced in the protracted hearing. In the circumstances we cannot say there was prejudicial error.

About fifty of the petitions were dismissed by the examiner for the reason that the petitioners "failed to appear at the hearing and failed to present any evidence in support of the petition and in addition such general evidence as was adduced on behalf of the petitioner failed to sustain the allegations" of the petitions. The general evidence referred to consisted of the testimony of a heating engineer and, presumably, evidence concerning the general conditions of hallways, etc. At the outset of the hearings the examiner announced with reference to petitioners who were not actually present at the hearing that "unless and until they present their own case, of course, there is no case." A moment later he said, "I still don't see how there could be a case without the petitioner being here, but we will go into that a little later on."

If nothing more were revealed by the record there would perhaps be a question as to whether there was actually an offer of evidence and a ruling against its admissibility.[6] But the view expressed by the examiner did not remain tentative; it is plain that he adhered to his initial decision and that it became a guiding and ultimate ruling in the case. From an offer and exclusion of certain photographs, from a repetition of the ruling, and from what was said in the examiner's orders as to the absent petitioners, it is quite plain that he meant to and did exclude and refuse to consider any evidence which might be submitted in behalf of any and all absent petitioners. This was error. There is nothing in the Rent Act or in any general rule of practice which requires a petitioner to testify in his own behalf. The Administrator's regulation 18(c) provides that if a petitioner fails to appear his case may be dismissed for want of prosecution, etc. But this does not mean that every petitioner must appear and give testimony in person; it is sufficient if he appears by counsel. Moreover, it is entirely conceivable that persons other than the actual tenants might have given competent and even persuasive testimony on the issues. Under regulation 18(e) it is provided that the examiner "shall not be bound by statutory

---

4. See note 2, supra.

5. The examiner later explained that he had another case set for the following morning.

6. Cf. Pitts v. United States, D.C.Mun. App., 95 A.2d 588, decided March 31, 1953.

provisions or rules of practice, procedure, pleading or evidence." This authorizes a practice more relaxed than that followed in strictly judicial proceedings. And not even in judicial proceedings is there any requirement that a party must testify in his own behalf or even that he must be physically present.[7] To refuse to consider evidence which may be offered in behalf of absent petitioners and then dismiss their cases because they were absent seems to us to be imposing sanctions not recognized in law.

■ We are next concerned with contentions that the findings and recommended orders do not include the factual bases for conclusions reached, manifest a disregard of the law and the facts, are contrary to the evidence, and are inconsistent with one another. Petitioners' omnibus motion included a request that the examiner clarify his findings and recommended orders, that he make findings with specific reference to some of the things included in the minimum-service standard, and other matters discussed elsewhere in this opinion.

The examiner's findings and recommended orders, adopted by the Administrator, resulted in a dismissal of fourteen of the petitions for which evidence was introduced. These fourteen cases are represented by the findings, recommended order and notice in case No. 933 which is said to be typical. Counsel have elected to present the appeal on the basis of this one case and seem to be in agreement that if it should be reversed the thirteen others which it represents should also be reversed. Accordingly, we shall treat this one case as dispositive of those identical with it. The findings in case No. 933 show the maximum rent ceilings on January 1, 1951, and as of the date of the findings; that the "services then supplied by the landlord[8] in connection with such rent included janitor, laundry facilities, resident manager, gas, electricity, heat, refrigerator, hot water, storage space, water rent, screens and repairs inside and outside;" that the housing accommodations were inspected in connection with the hearing and finally "there has occurred no diminution of service sufficient to form any basis for either an order to maintain the service standard or to decrease the maximum rent ceiling." Accordingly it was recommended that the petitions be dismissed. On review, the Administrator approved and adopted the findings and orders of the examiner.

The question presented is whether the findings thus made give the petitioner the procedural due process required by the statute. It is required that the examiner, after hearing, *shall make findings of fact* and recommend an appropriate order. The Administrator, if the case is reviewed by him, may grant a hearing and may either make his own findings of fact or affirm those of the examiner and make an appropriate order, but in either case the findings are conclusive is supported by substantial evidence.[9] It is contended by petitioners that, although the examiner is not required to recite the evidence, the statute does require that he state specifically the basic findings of fact upon which the ultimate finding is predicated.

The findings of the examiner in case No. 933, so far as disclosed, are only that the landlord supplied certain services on January 1, 1951 and that there had occurred no diminution of service sufficient to form any basis for either an order to maintain the service standard or to decrease the maximum rent ceiling. This of course was the ultimate conclusion or finding upon which the validity of the order depends.

The Administrator contends that "the housing accommodations were inspected and then specific findings were made if there was evidence upon inspection that the service standard was being violated." In this regard we note that the very wording of the ultimate finding itself implies that the examiner found some diminution of the services, but in which respect and to what extent is left to conjecture. However, if the results of the inspections were as stated in the Administrator's brief, that

7. Of course a party, like any outsider, is subject to subpoena as a witness, but that is another matter.

8. Presumably on January 1, 1951.

9. Code 1951, Supp. I, §§ 45–1608, 45–1609.

factor in each case should have been included in tthe findings rather than a naked statement that inspection was made. Aquino v. Knox, D.C.Mun.App., 60 A.2d 237, 240. There we said: "One of the basic requirements of procedural due process in a quasi-judicial proceeding is the right of the contesting parties to know the facts relied upon by the tribunal in deciding the case. To allow less is to permit star chamber methods."[10] We think it clear that the established requirements have not been followed in this case.

The difficulty with the fourteen petitions just discussed was to some extent avoided in the disposition of twenty of the others. In all of those twenty the examiner stated specifically some conditions which were observed in the apartments. The orders in ten of the cases recited that the landlord had indicated a willingness to correct the conditions and concluded that there had been no alteration in the minimum-service standard sufficient to form a basis for adjustment of the rent ceiling. However, it was provided in each instance that the finding could be reopened after a certain date should landlord fail to correct the condition. The remaining ten contained a finding that the landlord was supplying less than the minimum-service required and ordered him to maintain the standard by taking specific action. In no case did the Administrator order a reduction in rent. While the latter ten cases also contained specific findings concerning the physical condition of the apartments, there is no suggestion in any of the twenty as to what was decided with regard to heat, hot water, janitor service and other factors which were a part of the minimum-service standard and concerning which issues were raised and evidence presented at the hearing. Therefore we must hold that even these orders do not set forth the findings with the "substantial particularity" required by law.[11] Rather, we think that "substantial particularity" in this case requires findings on the elements comprising the minimum-service standard where the presence of those elements is specifically put in issue and evidence introduced.[12] We therefore rule that the thirty-four orders now under consideration were "not in accordance with law"[13] and must be remanded for further proceedings. It also seems necessary to discuss other questions raised by these appeals.

Petitioners contend that the findings and recommended orders are contrary to the evidence in the case and manifest a disregard of the law and the facts. But since, as we have seen, there is an absence of adequate findings of fact, we are not in a position to rule on these contentions. American Broadcasting Co. v. Federal Communications Comm., 85 U.S.App.D.C. 343, 179 F.2d 437.

We do not think that the fact that the examiner's findings and recommended orders may be inconsistent with one another offers any cause for complaint. Each apartment is unique unto itself and even though there may be common questions of fact concerning some elements of the service standard, the decision as to one apartment could with propriety be different from that as to another. Whether or not a minimum-service standard has been maintained is in most instances a matter of degree and we have no doubt that the Administrator could issue a repair order to the landlord and yet conclude that there had been no diminution of service sufficient to require a reduction of the rent ceiling.

10. Citing Saginaw Broadcasting Co. v. Federal Communications Comm., 68 App.D.C. 282, 96 F.2d 554, certiorari denied Gross v. Saginaw Broadcasting Co., 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391; Atchison, Topeka & S. F. Ry. Co. v. United States, 295 U.S. 193, 55 S.Ct. 748, 79 L.Ed. 1382; cf. Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; Mississippi River Fuel Corp. v. Federal Power Comm., 82 U.S.App.D.C. 208, 163 F.2d 433; Colorado Interstate Gas Co. v. Federal Power Comm., 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206; note 146 A.L.R. 209, 236. See also Winkler v. Ballard, D.C.Mun.App., 63 A.2d 660.

11. Aquino v. Knox, D.C.Mun.App., 60 A.2d 237.

12. See Johnston Broadcasting Co. v. Federal Commun. Comm, 85 U.S.App.D.C. 40, 175 F.2d 351.

13. Code 1951, Supp. I, § 45–1609(b).

It is urged that one of the matters alleged in the petitions and at the hearings and concerning which the examiner failed to make any findings was that the maximum rent ceilings were substantially higher than that generally prevailing for comparable housing accommodations. It is said that petitioners offered a list of such housing where the facilities were far superior to that of the accommodations in question. However, the record does not show that such a list was in fact submitted for the consideration of the examiner and the Administrator.

With regard to the argument that improper and inadequate notice of a rent increase was given petitioners by the landlord as provided by supposed agreement between the parties, it is sufficient to say no agreements between the parties concerning such a notice are included in the record before us.

Petitioners urge that the Administrator should have made findings on these questions: (1) Whether a 2% per calendar year increase in the rent was determined by using the proper calendar year basis as provided by law;[14] (2) Whether taxes charged to petitioners were properly apportioned as to the premises.[15]

█ The Rent Act is explicit on the purposes of a hearing such as that held in this case. Tenants may ask for an adjustment when (1) due to peculiar circumstances the rent ceiling is substantially higher than that generally prevailing for comparable housing accommodations; (2) the service supplied is less than that established by the minimum-service standard for the housing accommodations; (3) the maximum rent ceiling permits the receipt of unduly high rent. At no time have petitioners made the argument that wrongly apportioned taxes or error in calculating the automatic increases granted by section 45–1602(4) ei-

ther created "peculiar circumstances"[16] or permitted the receipt of an unduly high rent. Yet, those are the only two considerations which may be urged in this particular proceeding. Therefore, the questions were not properly raised and the petitioners' motion for findings with regard thereto was properly denied.

It is abundantly plain that petitioners are really objecting to automatic statutory increases which had been allowed the landlord pursuant to his filing for them under section 45–1602. No appeal lies from the Administrator's determination of ceilings under that section, Cox v. Cogswell, D.C. Mun.App., 69 A.2d 659, and petitioners have no standing in this appeal as to these two points in any event, regardless of whether they claim to be proceeding under section 45–1604 or not.

The same procedural infirmity afflicts petitioners' contentions that as to some of the apartments the landlord was not entitled to a rent increase since he had filed no schedule with the Administrator. It must be remembered that this was a proceeding at the instance of the tenants for adjustments; it was not a proceeding by the landlord asking rent increases.

█ It is contended that the Administrator erred in summarily dismissing case No. 987 on the ground that the petitioner no longer lived at the premises. Counsel concedes that this petitioner is no longer a tenant and no attempt was made to substitute anyone in his place. We have held that determinations of the Rent Administrator have no retroactive effect. Wilkerson v. Montgomery, D.C.Mun.App., 47 A.2d 102. Since petitioner is no longer a resident of the premises he would not be affected favorably or otherwise by any order of the Administrator; hence there was no error in dismissing that petition.

14. Code 1951, Supp. I, § 45–1602(4).

15. General Order 13 of the Administrator cites an increase in real estate assessments and allows a compensatory rent increase. It provides how this increase is to be apportioned among the apartments. The 1951 Rent Act expressly recognizes the increase allowed by Gen-

eral Order 13. Code 1951, Supp. I, § 45–1602(4).

16. Torre v. Berkowitz, D.C.Mun.App., 93 A.2d 87, defines "peculiar circumstances" as being unusual or special circumstances preventing a landlord and tenant from bargaining freely.

Several alleged errors are raised by petitioners for which we find absolutely no basis in the record. It is contended that not all the premises were inspected even though the orders so state; that counsel for landlord was permitted to accompany the examiner on the inspections which were made in the absence of any notice of the inspections to counsel for petitioners; and that it was error for the examiner to state to counsel for the petitioners during the luncheon recess that he would not consider the expert testimony of the heating engineer. None of these allegations have any foundation in the record. We cannot decide a case on statements contained in briefs of counsel,[17] and must rule once again that one seeking reversal in an appellate court has the burden of affirmatively establishing error.[18]

Finally petitioners argue that the examiner committed reversible error in his rulings on admissibility of evidence in permitting witnesses who had no independent recollection to read from prepared statements items of expenditures made by the landlord. The statute provides: "The landlord and tenant shall be given an opportunity to be heard or to file written statements, due regard to be given the utility and relevance of the information offered and the need for expedition. In any such hearing the common-law rules of evidence shall not be controlling." Code 1951, Supp. I, § 45–1608(b). This expresses the Congressional intent that there should be the broadest latitude in the reception of evidence and that the examiner should have the benefit of all evidence that may have some value concerning the issues. There was no error in this respect.

Petitioners also make the point that the examiner rejected certain documentary evidence offered by landlord, and yet received them in as "proffered evidence." The argument is that if the evidence were not admissible and this was so ruled by the examiner, it should not have been received at all. Petitioners have particular reference to the unsworn statement of an absent witness which counsel for landlord attempted to introduce. Although this was rejected the examiner stated that "I will accept it as a proffer as to what this lady would testify to if she were here." But it is clear that the examiner did not admit the statement into evidence but only meant to preserve it for the record. There was no error in this respect.

Case No. 987 Affirmed as moot.

Cases No. 950 (and the approximately 49 cases grouped therewith) Reversed with instructions to allow petitioners to present testimony.

Cases No. 433 and No. 933 (and the approximately 34 cases grouped therewith) Reversed for further proceedings in accordance with this opinion.

17. Winkler v. Ballard, supra, note 10.

18. Jennings v. Gilbertson, D.C.Mun.App., 74 A.2d 839.