The **LAWSON MILK COMPANY**,
Plaintiff-Appellee,

v.

Orville L. **FREEMAN**, Secretary of Agriculture, Defendant-Appellant.

The **LAWSON MILK COMPANY**,
Plaintiff-Appellant,

v.

Orville L. **FREEMAN**, Secretary of Agriculture, Defendant-Appellee.

Nos. 16269, 16270.

United States Court of Appeals
Sixth Circuit.

March 28, 1966.

H. Keith Eisaman, Washington, D. C., for Lawson Milk Co.

Robert C. McDiarmid, Atty., Dept. of Justice, Washington, D. C., for Secretary of Agriculture, John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, Attys., Dept. of Justice, Washington, D. C.,

Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, on the brief.

Before WEICK, Chief Judge, CECIL, Senior Circuit Judge, and BROOKS, District Judge.*

BROOKS, District Judge.

These cross-appeals result from litigation arising under the Agricultural Marketing Agreement Act of 1937 as amended, 7 U.S.C. § 601 et seq. The Lawson Milk Company, a handler of milk under Milk Marketing Order No. 75,[1] which regulated the Cleveland marketing area, filed a petition under Section 8c(15) (A) of the Act, 7 U.S.C. § 608c(15) (A) to recover refunds of compensatory payments, totalling $92,405.62, made to the Market Administrator in 1947 through 1952, which sum was alleged to have been illegally assessed. These compensatory payments were required by Section 975.72(a) of Order 75, and applied to handlers like Lawson who were not fully regulated by the Order because their market sales in the marketing area amounted to less than ten per cent of their total sales. One of the purposes of the compensatory payment provisions of Order 75 was to protect the uniform or blend price received by producers of the milk who supplied the marketing area and which price could otherwise be reduced by competition with non-regulated milk purchased outside of the marketing area. Also, the fully regulated handlers in the marketing area who are required to pay the minimum class prices for their milk might be unable to compete with non-regulated handlers purchasing outside milk at unregulated prices. On the other hand, the compensatory payment provi-

sions were a substitute for the full regulation of a handler, such as Lawson, as full regulation by the Order would make it more difficult for a company that had only a minimum of its business in the marketing area to compete pricewise in the sale of milk with other milk companies not required to pay regulated prices for their milk in areas not regulated by the Order. Specifically, the provisions of Order 75 provided that non-fully regulated handlers, such as Lawson, distributing less than ten per cent of their fluid milk supply in the Cleveland marketing area were required to pay to the pool's producers through the Producers Settlement Fund an amount equal to the difference between the Class I price (for fluid use) and the Class III price (for manufacturing use) on all milk sold as fluid milk in such area.[2]

The validity of the provisions of Order 75, providing for these compensatory payments was upheld by the Secretary of Agriculture (acting through the Judicial Officer) in the Section 8c(15) (A) proceeding and Lawson's claim for refund was denied. On appeal, this decision was affirmed by the United States District Court for the Northern District of Ohio, Eastern Division (Civil Action No. 34708). An appeal to this Court was then taken but was stayed pending the decision in Lehigh Valley Cooperative Farmers, Inc. v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345 (1962). The decision of the Supreme Court in that case held that the compensatory payment provisions of Milk Marketing Order No. 27, there under attack, and which were similar to the compensatory payment provisions of Order 75, were violative of

* Honorable Henry L. Brooks, Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation.

1. In 1959 former Order 75 was merged (24 FR 5645, 5987) with former Order 60, combining and enlarging the two marketing areas regulated by the Orders and designated Order 36 (7 CFR, Part 1036).

2. For a fuller understanding of the details and complexities of the milk marketing orders promulgated under the Act, see Lehigh Valley Cooperative Farmers, Inc. v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345 (1962); United States v. Rock Royal Cooperative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939); Grant v. Benson, 97 U.S.App.D.C. 191, 229 F.2d 765 (1955), cert. denied 350 U.S. 1015, 76 S.Ct. 658, 100 L.Ed. 875.

Section 608c(5) (G) [3] of the Act, and invalid.

The present case was then remanded to the district court which held the compensatory payment provisions of Order 75 invalid, and then remanded it to the Secretary for determination of the validity of the two year limitation provision of the Order and the defense of estoppel, which had not previously been decided by the Secretary because of his decision upholding the compensatory payment provisions. On remand, the Judicial Officer directed the Cleveland Marketing Administrator to refund to Lawson the sum of $47,719.19 which was the amount of compensatory payments paid within the two year limitation period, but denied Lawson's claim for interest on the refund. On review, the district court affirmed on the limitation issue but held that interest should be paid on the amount refunded. These cross-appeals are from that judgment.

It is concluded that the district court correctly held that limitation provisions of the Order were valid and applicable, but erred in deciding that interest should be allowed on the amount refunded.

 Section 8c(7) (D) of the Act, Title 7 U.S.C. § 608c(7) (D) provides that a marketing order shall contain terms and conditions "Incidental to, and not inconsistent with, the terms and conditions specified in subsections (5)–(7) of this section [other terms and conditions common to orders] and necessary to effectuate the other provisions of such order". The two year limitation provision and the interest payment provision of Order 75 were both promulgated by the Secretary and made a part of the Order under the authority of this section of the Act. It is not disputed that these two provisions were contained in the Order issued by the Secretary after due notice and public hearing as required by Section 8c(3) of the Act, Title 7 U.S.C. § 608c (3), and that the Order became effective as provided by Section 8c(9) of the Act, Title 7 U.S.C. § 608c(9), nor is there any showing that the evidentiary findings of the Secretary upon which the adoption of these two provisions were based are arbitrary and lack substantial evidence to support them. Without a showing that the action of the Secretary was arbitrary, his action is presumed to be valid. Pacific States Box and Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, (1935); Donaldson v. United States, 264 F.2d 804 (6th Cir. 1959); Benson v. Schofield, 98 U.S.App.D.C. 424, 236 F.2d 719 (1956); cert. denied, 352 U.S. 976, 77 S.Ct. 363, 1 L.Ed.2d 324; Reed v. Franke, 297 F.2d 17 (4th Cir. 1961). It follows, therefore, that the attack upon the limitation provision of the Order must rest upon the contention that it is not authorized by Section 8c(7) (D) of the Act, Title 7 U.S.C. § 608c(7) (D), and that the challenge to the interest provision must be based upon the Secretary's interpretation of the provision itself, Section 975.89(b) of the Order.

 The two year termination of obligation provision is contained in Section 975.97(d) [4] of the Order, and in pertinent part provides that any obligation on the part of the Market Administrator to pay a handler a refund shall terminate two years after the end of the calendar month during which the payment was made by the handler, unless such handler, within

3. "No marketing agreement or order applicable to milk and its products in any marketing area shall prohibit or in any manner limit, in the case of the products of milk, the marketing in that area of any milk or product thereof produced in any production area in the United States."

4. "(d) Any obligation on the part of the market administrator to pay a handler any money which such handler claims to be due him under the terms of this order shall terminate two years after the end of the calendar month during which the milk involved in the claim was received if an underpayment is claimed, or two years after the end of the calendar month during which the payment (including deduction or set-off by the market administrator) was made by the handler if a refund on such payment is claimed, unless such handler, within the applicable period of time, files, pursuant to section 8c(15) (A) of the act, a petition claiming such money."

the applicable period of time, files, pursuant to Section 8c(15) (A) of the Act, a petition claiming such money. Lawson did not file a petition claiming a refund for the payments made from December, 1947 to May, 1952 until June, 1953, and, therefore, was not entitled to a refund for any payments made prior to June, 1951, unless the provision of the Order was not " * * * Incidental to, and not inconsistent with, the terms and conditions specified in subsections (5)–(7) of this section and necessary to effectuate the other provisions of such order." Section 8c(7) (D), 7 U.S.C. § 608c(7) (D). That the limitation provision is not inconsistent with the Act and is in fact necessary to effectuate the provision of the Order is clear from the unchallenged findings of the Secretary after the public hearing resulting in its adoption, 14 F.R. 444–449,[5] and see Sterling Davis Dairy v. Freeman, 253 F.Supp. 80 (D.C.N.J. decided 1965).

■■■ The decision of the Secretary that no interest was due on the refund, with which the district court disagreed, was based on the Secretary's interpretation of Section 975.89(b) [6] which is the only section of the Order which deals with the payment of interest. It is headed "Overdue accounts" and states that interest shall begin to run following the "due date" of the obligation. The refund paid in this case was not an "overdue account" nor did it have a "due date" until after the final order of the Secretary at which time payment was promptly made. This construction of this section is reasonable and is consistent with the uniform practice of the Secretary. In re: M. H. Renken Dairy Co., 14 A.D. 794. Where the construction of an administrative regulation is in issue, great deference must be shown to the interpretation given it by the officers or agency charged with its administration. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1964); Power Reactor Co. v. Electricians, 367 U.S. 396, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961); Bowles v. Seminole Rock Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945).

It is concluded that the claim for interest was properly disallowed by the Secretary.

Affirmed in part; reversed in part.

5. "Without a termination of obligations, handlers may file claims which, because the period involved extends back over many years, are in substantial amounts. Funds for the payment of such claims are obtained only from payments to producers supplying the market with milk during the period when the claims are paid. This results in a reduction in the payments to the producers. Since, over extended periods of time, there is a considerable turnover in the producers supplying a market, a reduction in their payments results in inequities as to those producers who were not in the market during the period out of which the handlers' claims arise. This result, therefore, tends to cause producers to leave the market, and is a potential cause of milk shortage. If, on the other hand, the minimum prices for milk are increased to compensate producers for deductions made to pay old claims, such prices probably would not be in the public interest. Thus, in the absence of a termination of obligations, the stability of milk markets is endangered by the ever-present threat of the necessity for making substantial payments arising from the accrual of liabilities over extended periods of time.

"The marketing agreements and orders should provide that any obligation to pay a handler any money which such handler claims to be due him under the terms of an order, shall terminate two years after the end of the calendar month during which the milk involved in the claim was received if an underpayment is claimed, or within two years after payment was made if a refund is claimed, unless such handler, within such period of time, files, pursuant to section 8c(15) (A) of the act, a petition claiming such money.

"There was general agreement at the hearing that the two year period was reasonable. This will allow a handler ample time to decide whether he should contest an obligation imposed upon him pursuant to an order."

6. (b) *Overdue accounts.* Any unpaid obligation of a handler or of the market administrator pursuant to §§ 975.84, 975.85, 975.86, 975.87, 975.88 or 975.89(a) shall be increased by one-half of one percent on the first day of the calendar month next following the due date of such obligation and on the first day of each calendar month thereafter until such obligation is paid.