**BIODIVERSITY LEGAL FOUNDATION,**
**et al., Plaintiffs,**

v.

**Bruce BABBITT, Secretary, U.S.**
**Department of the Interior,**
**et al., Defendants.**

**Civil Action No. 96–00227 (SS).**

United States District Court,
D. Columbia.

Oct. 10, 1996.

Eric Robert Glitzenstein, Katherine Anne Meyer, Kimberley Kerry Walley, Meyer & Glitzenstein, Washington, DC, for plaintiffs.

Teri Ronelle Thomsen, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for federal defendants.

Philip Anthony Nacke, Hopkins & Sutter Washington, DC, amicus.

*MEMORANDUM OPINION*

SPORKIN, District Judge.

This matter is before the Court on parties cross-motions for summary judgment.[1] Plaintiffs claim that the United States Fish and Wildlife Service (FWS) should have granted plaintiffs' petition to list as threatened or endangered the Alexander Archipelago wolf, which is found in the Tongass National Forest in Alaska. Plaintiffs contend that the FWS's decision to find such a listing unwarranted improperly relied on illegal considerations and was arbitrary and capricious in ignoring the overwhelming evidence in favor of listing the wolf. Defendants assert that they properly relied on the "basis of the best scientific and commercial data available," 16 U.S.C. 1533(b)(1)(A), in concluding

---

1. The Court has also considered the brief and oral argument of the Amicus Curiae Ketchikan Pulp Company.

that listing was not warranted, and that the so-called illegal considerations were not factors in their decision.

### BACKGROUND

The Alexander Archipelago wolf is a subspecies of the gray wolf, distinguished because it "tends to be darker, smaller, and short-haired than wolves in northern and interior areas of Alaska." Plaintiff's Motion for Summary Judgment at 9. The wolf's primary prey is the Sitka black-tailed deer, although it also feeds on beaver, mountain goat, moose and spawning salmon. The population of Archipelago wolves at issue here are those that live in Alaska's Tongass National Forest, an area of islands of approximately [50,000 square miles] that extends from the southeast corner of Alaska along the Pacific coastline. Portions of the Tongass are the subject of harvesting for timber. That harvesting is regulated by the Forest Service, an agency of the Department of Agriculture, pursuant to the National Forest Management Act, 16 U.S.C. § 1600. Pursuant to that Act, the Forest Service has a longstanding plan for the Tongass that limits the amount and location of old-growth trees that may be harvested. That plan, the Tongass Land Management Plan (TLMP), was adopted in 1979 and revised in 1986 and 1991. Its guidelines for harvesting look as far into the future as the year 2140. Since 1987, the Forest Service has been considering proposals for major revisions of the plan.

### The Alexander Archipelago wolf and the harvesting of the Tongass

Largely as a result of the Forest Service's consideration of revisions, concerns have arisen about the viability of the Archipelago wolf (as well as other species)[2] in light of the proposed harvesting. Central to this concern is the effect clear cutting has on its main prey—the Sitka black-tailed deer—and also the easy access clear cutting provides for hunters of the wolf.

Since 1990, representatives from the Forest Service, FWS and Alaskan state agencies have been studying the Archipelago wolf. Despite at least two recommendations for large scale revisions to the TLMP, the Forest Service has failed to create a satisfactory plan for conservation of the wolf's habitat.

### Plaintiff's petition

In May 1994, rather than waiting any longer for the Forest Service to act, Plaintiff petitioned to have the wolf listed by the FWS as threatened or endangered. Such a listing would essentially take responsibility for the wolf's future out of the hands of the Forest Service and put it directly with FWS. Plaintiff's petitioned pursuant to 5 U.S.C. 553(e) and 16 U.S.C. § 1533(b)(3)(A), which require FWS to consider a third-party petition for listing of a species under the Endangered Species Act. In May 1994, FWS made its 90–day finding that "[a]vailable information indicates that past and planned harvest of old growth forest in southeast Alaska may cause substantial long-term reductions of Sitka black-tailed deer" which is the wolf's primary food source. A.R.II.A.1 at 10. The FWS then had 12 months from the date of the petition to decide whether a listing was actually "warranted." 16 U.S.C. § 1533(b)(3)(B).

Over the 12–month period, FWS's Juneau field office collected data and received public comment, as required by statute.[3] In November 1994, the field office made a "warranted" recommendation to the regional director.[4] In justifying that recommendation,

---

**2.** This Court recently issued a Memorandum Opinion and Order in *Southwest Center for Biological Diversity v. Babbitt*, 939 F.Supp. 49 (D.D.C.1996) addressing the Secretary's decision not to make a warranted finding on the proposed listing of the Queen Charlotte goshawk, which resides in the same area as the Alexander Archipelago wolf. *Southwest Center for Biological Diversity v. Babbitt*, CA No. 95–2138 (SS), Memorandum Opinion and Order, September 25, 1996.

**3.** The FWS process entails the local field office collecting data and receiving comment from independent scientists and other interested parties.

The field office then makes its recommendation to the regional director. The regional director, after making an independent review of the record, makes a recommendation to the FWS director in Washington. The director makes the final warranted/not warranted decision.

**4.** Prior to making its recommendation, the field office held a briefing session. At that briefing session, a document of "pros and cons" for listing the wolf was circulated to participants. On the "pro" side, it listed the fact that the wolf appeared to meet all the requirements for listing under the Endangered Species Act. On the

the office noted that "[t]he conversion of old growth forest into managed stands in southeast Alaska, which began on an industrial scale approximately 30 years ago, is expected to begin resulting in dramatic adverse effects on deer and wolf populations in 10 to 30 years." A.R.II.D.11.

The regional director did not follow the field office's recommendation. In a 26–page memorandum, which was approved by the director of FWS in January 1995, the Regional Director concluded that listing of the Archipelago wolf was "not warranted." The memorandum concludes,

> [t]he Service has evaluated the status of the Alexander Archipelago wolf against the five listing factors and believes that the species does not qualify for listing as threatened under the Endangered Species Act at this time. However it is clear by our analysis that *without significant changes to the existing TLMP, the long-term viability of the Alexander Archipelago wolf is seriously imperiled.*

A.R.I.A. at 19 (emphasis added). The regional director goes on to state that

> The Service believes ... that the amount of habitat degradation that has occurred to date has not resulted in significant population declines. Furthermore, we believe that the Forest Service's TLMP revision process together with subsequent implementation of the revised TLMP will provide sufficient opportunity to *reverse the declining population trend which we believe would occur under continued implementation of the current TLMP.*

*Id.* (emphasis added).

Consistent with the regional director's recommendation, on February 15, 1995 the FWS made its official 12–month finding. That finding was published in the Federal Register on February 23, 1995. The finding stated that "[o]n the basis of the best scientific and commercial information available, the Service find[s] the petition is not warranted at this time." 60 F.R. 10056. In the next paragraph, however, the Service acknowledged that "it is clear by our analysis that

without significant changes to the existing Tongass National Forest Land and Resource Management Plan [by the Forest Service], the long-term viability of the Alexander Archipelago wolf is *seriously imperiled.*" *Id.* (emphasis added).

*ANALYSIS & DECISION*

Judicial review of agency action under the Endangered Species Act (ESA) is pursuant to the Administrative Procedure Act, 5 U.S.C. § 706. *See City of Las Vegas v. Lujan,* 891 F.2d 927, 932 (D.C.Cir.1989). Under the APA, this Court may set aside the actions of the Federal defendants only if they are " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law,' " 5 U.S.C. § 706(2)(A). This standard of review is "highly deferential.... [and] presumes agency action to be valid." *Ethyl Corp. v. Environmental Protection Agency,* 541 F.2d 1, 34 (D.C.Cir.) (en banc), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2662, 2663, 49 L.Ed.2d 394 (1976) (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Pacific States Box & Basket Co. v. White,* 296 U.S. 176, 185–86, 56 S.Ct. 159, 163–64, 80 L.Ed. 138 (1935); *United States v. Chemical Foundation,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926)). This does not mean that this court should "rubber-stamp the agency decision." *Ethyl Corp.,* 541 F.2d at 34.

Section 1533 of the ESA reads in relevant part:

> (a)(1) The Secretary shall by regulation ... determine whether any species is an endangered species or a threatened species because of any of the following factors:
>
> (A) the present or threatened destruction, modification, or curtailment of its habitat or range;....
>
> (D) the inadequacy of existing regulatory mechanisms; ....
>
> (b)(1)(A) The Secretary shall make determinations required by subsection (a)(1) of this section solely on the basis of the best scientific and commercial data available to

---

"con" side, among other factors, was that a "not warranted" finding was the "[l]east controversial

option" with the Alaskan delegation to Congress. A.R.II.D. 14, 17–18.

him after conducting a review of the status of the species.

16 U.S.C. § 1533.

The Secretary's own announcement of his decision not to list the wolf makes clear first, that there is a "threatened destruction ... of [the wolf's] habitat," 16 U.S.C. § 1533(a)(1)(A) and second, that the Secretary did not make his determination "*solely* on the basis of the best scientific and commercial data." 16 U.S.C. § 1533(b)(1)(A) (emphasis added). In multiple places, the record makes reference to possible future actions of the Forest Service to provide sanctuary for the wolf. Although the Secretary has every right to do this, he cannot use promises of proposed future actions as an excuse for not making a determination based on the existing record.[5]

The plain language of the statute instructs the agency to consider "existing regulatory mechanisms," 16 U.S.C. § 1533(a)(1)(D), including mechanisms created by other agencies of government. Clearly, if the Forest Service had an *existing* plan that would protect the wolf to the standards required by the ESA, then FWS would not have to enact its own plan. But it is abundantly clear from the record that the Forest Service has yet to formulate a plan that satisfies the scientists from either agency. If the Secretary believes that without such a plan the wolf is threatened or endangered, then it is his duty under the ESA to make a "warranted" finding and go about the process of promulgating appropriate regulations.[6]

5. Defendants contend that the Archipelago wolf is not endangered or threatened at this time. At the same time they admit that under the current Forest Service plan, the wolf will be "seriously imperiled" in the future. 60 F.R. 10056. Clearly, in passing the ESA, Congress did not intend the Secretary to wait until the particular species is on the verge of extinction before taking action. If, with the continuation of current circumstances, the wolf will be "endangered" in the future, it is clearly "threatened" today.

6. Clearly, no listing need be permanent. As the Fifth Circuit has stated, "it would be contrary to the purpose of the ESA to view [it] as a static document without the ability to add species as they become endangered or remove animals that are no longer endangered." *United States v. Ivey*, 949 F.2d 759, 764 (5th Cir.1991), *cert. de-*

This action will be remanded to the Secretary with instructions that he reconsider the 12-month finding in light of the Court's decision. His determination must be made on the basis of the current Forest Service plan, and the status of the Alexander Archipelago wolf and its habitat, as they stand today.[7]

*nied* 506 U.S. 819, 113 S.Ct. 64, 121 L.Ed.2d 32 (1992). If the Forest Service subsequently revised the TLMP to protect the wolf, the FWS could obviously remove it from the list.

7. The Court recognizes plaintiffs' concern that the FWS could still go back and make a "not warranted" finding, and that in turn would lead to further litigation. The FWS has made clear, however, that it has serious concerns about the wolf's future. If the FWS makes a second "not warranted" finding, it will obviously have to make clear how those concerns have been allayed without reliance on the Forest Service's possible future actions. Furthermore, it will also have to directly address the findings made by its own field office in recommending a "warranted" decision.