MEMORANDUM OPINION
 

 SPORKIN, District Judge.
 

 This matter is before the Court on parties cross-motions for summary judgment.
 
 [1]
 
 Plaintiffs claim that the United States Fish and Wildlife Service (FWS) should have found “warranted” plaintiffs’ petition to list as threatened or endangered the Queen Charlotte goshawk, a bird found in the Tongass National Forest in Alaska. Plaintiffs contend that the FWS’s decision to find such a listing unwarranted improperly relied on illegal considerations and was arbitrary and capricious in ignoring the overwhelming evidence in favor of listing the goshawk. Defendants assert that they properly relied on the “basis of the best scientific and commercial data available,” 16 U.S.C. § 1533(b)(1)(A), in concluding that listing was not warranted, and that the so-called illegal considerations were not factors in their decision.
 

 BACKGROUND
 

 The Queen Charlotte goshawk is a large, but rarely-seen bird, residing almost exclusively in the old growth forests of Southeast Alaska and coastal British Columbia. It lives in the tree-top canopy, above the forests and survives by diving into the forest to capture smaller birds and squirrels. An adult goshawk has a wingspan of approximately two- and-a-half feet; it typically has a dark gray or black back, with a dark gray front, red eyes and vibrant yellow feet. (PI. motion at 8-9)
 

 The population of goshawks at issue here are those that live in Alaska’s Tongass National Forest, an area of islands of approximately [50,000 square miles] that extends from the southeast comer of Alaska along the Pacific coastline. Portions of the Tongass are the subject of harvesting for timber. That harvesting is regulated by the Forest Service, an agency of the Department of Agriculture, pursuant to the National Forest Management Act, 16 U.S.C. § 1600. Pursuant to that Act, the Forest Service has a longstanding plan for the Tongass that limits the amount and location of old-growth trees that may be harvested. That plan, the Tongass Land Management Plan (TLMP), was adopted in 1979 and revised in 1986 and 1991. Its guidelines for harvesting look as far into the future as the year 2140. Since 1987, the Forest Service has been considering proposals for major revisions of the plan.
 

 The goshawk and the harvesting of the Tongass
 

 Largely as a result of the Forest Service’s consideration of revisions, concerns have arisen about the viability of the goshawk (as well as other species) in light of the proposed harvesting. Since 1990, representatives from the Forest Service, FWS and Alaskan state agencies have been studying the goshawk. Despite at least two recommendations for large scale revisions to the TLMP, the Forest Service has failed to create a plan for conservation of goshawk habitat that satisfies plaintiff, or even the FWS.
 

 Plaintiffs petition
 

 In May 1994, rather than waiting any longer for the Forest Service to act, Plaintiff petitioned to have the goshawk listed by the FWS as threatened or endangered. Such a listing would essentially take responsibility for the bird’s future out of the hands of the Forest Service and put it directly with FWS. Plaintiffs petitioned pursuant to 5 U.S.C. § 553(e) and 16 U.S.C. § 1533(b)(3)(A), which require FWS to consider a third-party petition for listing of a species under the Endangered Species Act. In August 1994, FWS
 
 *51
 
 made its 90-day finding that plaintiff’s petition “presents substantial scientific or commercial information indicating that the petitioned action may be warranted.” The FWS then had 12 months from the date of the petition to decide whether a listing was actually Warranted.” 16 U.S.C. § 1533(b)(3)(B)
 

 Over the 12-month period, FWS collected data and received public comment, as required by statute. On April 24, 1995, near the end of the 12-month period, FWS’s acting regional director for the region encompassing the Tongass Forest sent a detailed 22-page memorandum to the national director recommending that the service issue a “not warranted” finding. That recommendation was approved by the Director on May 19,1995.
 

 In his memorandum, the regional director summarizes FWS’s findings. Ultimately, the Service had no clear sense of exactly how many goshawks live in the Tongass, or how much they depend on the old-growth forest for survival. The memorandum concludes, however, “that past and planned harvest of old growth forest may remove and fragment substantial portions of preferred habitat within the range of the Queen Charlotte goshawk in the United States if previously implemented land management plans and practices continue unabated.” Regional Director’s Memorandum, April 24, 1995, at 21 (A.R.I.A). The memorandum goes on to state that:
 

 [R]ecent proposals and actions by the Forest Service have or would modify historic management practices on the Tongass National Forest to conserve goshawk habitat.
 
 Although [FWS] has expressed concerns regarding the effectiveness of some habitat management strategies
 
 previously produced or implemented by the Forest Service, the Forest Service is conducting an assessment of current knowledge of goshawk biology that they stated will be used in addressing land management options to ensure goshawk habitat conservation____
 
 The Service does not currently possess sufficient information to determine or predict the effectiveness of proposed conservation actions.
 

 Id.
 
 (emphasis added). In his final recommendation, the regional director concludes that:
 

 [i]t is likely that continued large scale removal of old growth forest ... would result in
 
 significant adverse effects
 
 on the Queen Charlotte goshawk population in southeast Alaska. However, the Forest Service has indicated that it will address land management options to ensure goshawk habitat conservation.
 

 Id.
 
 (emphasis added).
 

 Consistent with the regional director’s recommendation, on May 19, 1995 FWS made its official 12-month finding. That finding was published in the Federal Register on June 29, 1995. The finding stated that “[o]n the basis of the best scientific and commercial information available, the Service find[s] the petition is not warranted at this time.” (A.R.I.B). In the next paragraph, however, the Service acknowledged that it shares petitioners’ concerns for “the long-term survival of the Queen Charlotte goshawk,” noting that “it is clear that without significant changes [by the Forest Service] to the existing [TLMP], the long-term viability of the Queen Charlotte goshawk may be
 
 seriously imperiled.”
 
 (A.R.I.B) (emphasis added).
 

 ANALYSIS & DECISION
 

 Judicial review of agency action under the Endangered Species Act (ESA) is pursuant to the Administrative Procedure Act, 5 U.S.C. § 706.
 
 See City of Las Vegas v. Lujan,
 
 891 F.2d 927, 932 (D.C.Cir.1989). Under the APA, this Court may set aside the actions of the Federal defendants only if they are ‘“arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law,’ ” 5 U.S.C. § 706(2)(A). This standard of review is “highly deferential____ [and] presumes agency action to be valid.”
 
 Ethyl Corp. v. Environmental Protection Agency,
 
 541 F.2d 1, 34 (D.C.Cir.) (en banc),
 
 cert. denied,
 
 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976) (citing
 
 Citizens to Preserve Overton Park v. Volpe,
 
 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971);
 
 Pacific States Box & Basket Co. v. White,
 
 296 U.S. 176, 185-86, 56 S.Ct. 159, 163-64, 80 L.Ed. 138 (1935);
 
 United States v. Chemical Foundation,
 
 272 U.S. 1, 14-15, 47 S.Ct. 1, 6,
 
 *52
 
 71 L.Ed. 131 (1926)). This does not mean that this court should “rubber-stamp the agency decision.”
 
 Ethyl Corp.,
 
 541 F.2d at 34.
 

 Section 1533 of the ESA reads in relevant part:
 

 (a) (1) The Secretary shall by regulation ... determine whether any species is an endangered species or a threatened species because of any of the following factors:
 

 (A) the present or threatened destruction, modification, or curtailment of its habitat or range; ----
 

 (D) the inadequacy of existing regulatory mechanisms; ....
 

 (b) (1)(A) The Secretary shall make determinations required by subsection (a)(1) of this section solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species.
 

 16 U.S.C. § 1533.
 

 The Secretary’s own announcement of his decision not to list the goshawk makes clear first, that there is a “threatened destruction ... of [the goshawk’s] habitat,” 16 U.S.C. § 1533(a)(1)(A) and second, that the Secretary did not make his determination
 
 “solely
 
 on the basis of the best scientific and commercial data.” 16 U.S.C. § 1533(b)(1)(A) (emphasis added). In multiple places, the record makes reference to possible future actions of the Forest Service to provide sanctuary for the goshawk. Although the Secretary has every right to do this, he cannot use promises of proposed future actions as an excuse for not making a determination based on the existing record.
 

 The plain language of the statute instructs the agency to consider “existing regulatory mechanisms,” 16 U.S.C. § 1533(a)(1)(D), in-eluding mechanisms created by other agencies of government. Clearly, if the Forest Service had an
 
 existing
 
 plan that would protect the goshawk to the standards required by the ESA, then FWS would not have to enact its own plan. But it is abundantly clear from the record that the Forest Service has yet to formulate a plan that satisfies the scientists from either agency. If the Secretary believes that without such a plan the goshawk is threatened or endangered, then it is his duty under the ESA to make a “warranted” finding and go about the process of promulgating appropriate regulations.
 
 [2]
 

 This action will be remanded to the Secretary with instructions that he reconsider the 12-month finding in light of the Court’s decision. His determination must be made on the basis of the current Forest Service plan, and the status of the goshawk and its habitat, as they stand today.
 
 [3]
 

 An appropriate order is attachéd hereto.
 

 ORDER
 

 For the reasons stated in the attached Memorandum Opinion, it is hereby
 

 ORDERED that Plaintiffs’ motion for summary judgment be GRANTED; and it is further
 

 ORDERED that Defendants’ motion for summary judgement be DENIED; and it is further
 

 ORDERED that this case be remanded to the Secretary of the Interior for him to take such other and further action as required by the opinion of the Court issued today.
 

 [1]
 

 . The Court has also considered the brief and oral argument of the Amicus Curiae Ketchikan Pulp Company.
 

 [2]
 

 . Clearly, no listing need be permanent. As the Fifth Circuit has stated, "it would be contraiy to the purpose of the ESA to view [it] as a static document without the ability to add species as they become endangered or remove animals that are no longer endangered.”
 
 United States v. Ivey,
 
 949 F.2d 759, 764 (5th Cir.1991),
 
 cert. denied
 
 506 U.S. 819, 113 S.Ct. 64, 121 L.Ed.2d 32 (1992). If the Forest Service subsequently revised the TLMP to protect the goshawk, the FWS could obviously remove the bird from the list.
 

 [3]
 

 . The Court recognizes plaintiffs’ concern that the FWS could still go back and make a "not warranted” finding, and that that in turn would lead to further litigation. The FWS has made clear, however, that it has serious concerns about the goshawk's future. If the FWS makes a second "not warranted" finding, it will obviously have to make clear how those concerns have been allayed without reliance on the Forest Service’s possible future actions.