**SOUTHWEST CENTER FOR BIOLOGICAL DIVERSITY, et al., Appellees,**

v.

**Bruce BABBITT and Jamie Rappaport Clark, Director, U.S. Fish and Wildlife Service, Appellants.**

**No. 99–5313.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 11, 2000.

Decided June 16, 2000.

Andrew C. Mergen, Attorney, United States Department of Justice, argued the cause for appellants. With him on the briefs were Lois J. Schiffer, Assistant Attorney General, and James C. Kilbourne, Attorney. Lisa E. Jones and Elizabeth A. Peterson, Attorneys, entered appearances.

Katherine A. Meyer argued the cause for appellees. With her on the brief was Eric R. Glitzenstein.

Before: EDWARDS, Chief Judge, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

The only issue raised on appeal in this case is whether the Endangered Species Act ("Act") requires the Fish and Wildlife Service to conduct an on-site population count of birds when the currently available data are sparse and calculations of a bird species population must of necessity be based on estimates. The Act provides that the Secretary of the Interior must make decisions whether to list a species as endangered or threatened "solely on the basis of the best scientific and commercial data available to him...." 16 U.S.C. § 1533(b)(1)(A) (1994). Appellees, the

Southwest Center for Biological Diversity, et al., ("Center"), argued below that the best available evidence demonstrates that the Fish and Wildlife Service should list the Queen Charlotte goshawk as a threatened or endangered species under 16 U.S.C. § 1533. Appellants, Bruce Babbitt, et al., ("Government") countered that the data did not compel such a listing. The principal dispute between the parties before the District Court was over what to make of the *best available data*, not whether such data existed. The District Court, however, sidestepped the parties' real dispute and concluded instead that the best available data simply was not good enough.

Indeed, instead of resolving the parties' dispute on the basis of the best available data in the record, the District Court issued an order remanding the case back to the Fish and Wildlife Service with instructions to count the goshawk population. *See Southwest Ctr. for Biological Diversity v. Babbitt*, Civ. No. 98–934, Order (D.D.C. July 20, 1999) ("Order"), *reprinted in* Joint Appendix ("J.A.") 1973. Appellants now challenge this order, claiming that the District Court's decision is completely at odds with the statute. We agree. The statute provides that the Secretary's decision must be made "solely on the basis of the best scientific and commercial data available to him." Therefore, on the record at hand, the District Court was without authority to order the Secretary to conduct an independent population count of the birds. Accordingly, we reverse the District Court's order, and we remand the case to the District Court for proper consideration of the parties' positions in light of the Act and an assessment of the available evidence.

## I. FACTS

On May 9, 1994, the Southwest Center for Biological Diversity filed a petition requesting that the Queen Charlotte goshawks, which are a "large, but rarely-seen" subspecies of hawks, be listed as threatened or endangered under the Act.

*Southwest Ctr. for Biological Diversity v. Babbitt,* 939 F.Supp. 49, 50 (D.D.C.1996); *see* 16 U.S.C. § 1533(b)(3)(A) (1994). On May 19, 1995, the Fish and Wildlife Service found that, based on the best available scientific and commercial evidence, no listing was warranted. *See Babbitt,* 939 F.Supp. at 51. This initial decision was based on the Fish and Wildlife Service's conclusion that the Forest Service would address land management options to ensure goshawk habitat conservation. The Center challenged this decision, and, on September 25, 1996, the District Court granted a summary judgment in favor of the Center, finding that the Secretary could not rely on the Forest Service's possible future actions "as an excuse for not making a determination based on the existing record." *Id.* at 52.

On remand, the Fish and Wildlife Service once again declined to list the Queen Charlotte goshawk as a threatened or endangered species, and the Center once again challenged the agency's determination. In a July 9, 1999 hearing before the District Court, the Government argued that its sole obligation under the Endangered Species Act is to consider and act on the best available data, which the Government claimed it had done. The District Court persisted, however, in suggesting that a population count was necessary. *See, e.g.,* Trial Tr. at 2–3, *reprinted in* J.A. 1913–14. The trial judge could not be moved from this position, not even by plaintiffs' acknowledgment that the District Court was required to assess the parties' positions in light of the best available evidence, not a population count. Following argument by the parties, the District Court issued an opinion on July 20, 1999, remanding the case to the Fish and Wildlife Service "for a more reliable determination of the Queen Charlotte goshawk population...." Order at 3, *reprinted in* J.A. 1975. This appeal followed.

## II. ANALYSIS

On the record before us, it is clear that the District Court exceeded its authority in ordering the Government to conduct a population count of the goshawk species. 16 U.S.C. § 1533(a)(1) instructs the Secretary to

determine whether any species is an endangered species or a threatened species because of any of the following factors:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;

(B) overutilization for commercial, recreational, scientific or educational purposes;

(C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1) (1994). The Secretary is to make such a determination "solely on the basis of the best scientific and commercial data available to him...." 16 U.S.C. § 1533(b)(1)(A). Read together, the two statutory provisions require the Secretary to list a species as endangered or threatened if, based solely on the best available data, any of § 1533(a)(1)'s five factors are sufficiently implicated. The "best available data" requirement makes it clear that the Secretary has no obligation to conduct independent studies. As we noted in *City of Las Vegas v. Lujan,* 891 F.2d 927, 933 (D.C.Cir.1989), in the context of emergency listings under 16 U.S.C. § 1533(b)(7), 16 U.S.C. § 1533(b)(1)(A) "merely prohibits the Secretary from disregarding available scientific evidence that is in some way better than the evidence he relies on. Even if the available scientific and commercial data were quite inconclusive, he may—indeed must—still rely on it at that stage."

Appellees do not claim—for good reason, we think–that the statute's reference to *"best scientific data available"* requires

the Secretary to find and consider any information that is arguably susceptible to discovery. In other words, appellees never have contended in this case that the Government is obliged to conduct an on-site population count of the goshawk. And appellees never have contended that the Secretary acted on the basis of no data. Rather, appellees have argued that the best available scientific data in this record demonstrate that the goshawk is already on the verge of extinction due to low population estimates and "some 'natural or manmade factors affecting its continued existence.'" Appellees Br. at 20 (quoting 16 U.S.C. § 1533(a)(1)(E)). This is the issue that properly was before the District Court, and this is the issue that should have been decided below.

The trial judge, however, ignored the statute, disregarded the parties' arguments, and determined instead that, because he found the available evidence inconclusive, the Secretary was obligated to find better data. The Government forthrightly concedes that "the district court's view has a superficial appeal—certainly the [Fish and Wildlife Service] would like to know how many [Queen Charlotte] goshawks there are...." Reply Br. at 3. But, as the Government contends (with no real contest from appellees), this superficial appeal cannot circumvent the statute's clear wording: The Secretary must make his decision as to whether to list a species as threatened or endangered "solely on the basis of the best scientific and commercial data available to him...." 16 U.S.C. § 1533(b)(1)(A); Reply Br. at 3 ("[T]he court's view is at odds with both the practical realities of endangered species work and the governing legal regime."). The Secretary argued below that the best available evidence supports the Government's decision not to list the goshawk, while the Center argued that the available evidence supports the opposite view. The District Court's responsibility was to assess the evidence and resolve the parties' dispute. The court's decision to sidestep this responsibility by imposing an obli-

gation upon the Secretary to find better data was error.

## III. CONCLUSION

For the foregoing reasons, we reverse the District Court's decision to remand the case to the Fish and Wildlife Service, and we remand the case to the District Court for consideration of the parties' positions in light of the Endangered Species Act and an assessment of the available evidence.