CENTER FOR BIOLOGICAL DIVER-
SITY, Biodiversity Conservation Alli-
ance, Pacific Rivers Council, Ecology
Center and Jacob Smith, Plaintiffs,

v.

Ralph MORGENWECK, in his official
capacity as Regional Director (Region
6) of the United States Fish and Wild-
life Service, Steven William, in his
official capacity as Director of the
United States Fish and Wildlife Ser-
vice, and Gale Norton, in her official
capacity as Secretary of the Interior,
Defendants,

v.

State of Wyoming, Intervenor
Defendant.

No. CIV.A.04–F–108 (OES).

United States District Court,
D. Colorado.

Dec. 17, 2004.

J. McCrystie Adams, Mike Harris, Neil Levine, Denver, CO, for Plaintiffs.

Kurt J. Bohn, United States Attorney's Office, Denver, CO, for Defendants.

## ORDER ON PENDING MOTIONS

FIGA, District Judge.

In this action, Plaintiffs Center for Biological Diversity, Biodiversity Conservation Alliance, Pacific Rivers Council, Ecol-

ogy Center and Jacob Smith contend that well-documented, scientific evidence demonstrates that the Yellowstone cutthroat trout ("YCT")[1], whose native habitat has declined to ten percent of its historical range, is an imperiled species and proves that listing of the YCT as at least a threatened species is warranted under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 et seq.

## I. FACTS

On August 14, 1998, several environmental groups and individuals filed a 101–page petition requesting that the Secretary of the Department of the Interior (the "Secretary"), who delegated her authority in this area to the United States Fish and Wildlife Service ("FWS"), list the YCT as threatened (the "Petition"). Petitioners asserted that the YCT was likely to become extinct throughout all or a significant portion of its range because it faced the following threats: stocking, angling pressure, habitat fragmentation and degradation, whirling disease and the New Zealand mud snail. Petitioners also stated that federal and state management actions that attempt to protect and grow YCT populations were insufficient to protect the YCT. In support of the Petition, Petitioners attached as exhibits numerous declarations and scientific studies, some several years old at the time, which argued that YCT extinction was imminent.

Nearly two and a half years passed before FWS conducted and completed a 90–day review of the Petition pursuant to 16 U.S.C. § 1533(b)(3)(A). It was finally completed after petitioners filed suit seek-

1. Plaintiffs offer the following description of the YCT, to which the defendants do not object: "The Yellowstone cutthroat trout (*Oncorhynchus clarki bouvieri*) is one of several inland cutthroat trout subspecies historically occupying western United States lakes and streams. Like all cutthroat trout, the Yellow-

stone cutthroat trout owes its common name to a distinctive red slash that occurs just below both sides of the lower jaw .... The historic range of the Yellowstone cutthroat trout included large regions of Montana, Wyoming, and Idaho, and small parts of Utah and Nevada." (Citations omitted.)

ing declaratory relief that FWS violated the ESA by not conducting the review within the statutorily-required time period. FWS concluded that the Petition "failed to present substantial information indicating that listing may be warranted." FWS pointed to a number of perceived flaws in the Petition, including that some of the information contained therein was "outdated" or "contradictory." Also, FWS stated that the Petition failed to take into account the success of federal and state YCT management programs.

Plaintiffs now challenge this finding and seek an order setting it aside and requiring FWS to reevaluate the listing of the YCT under the strict confines of the ESA. They contend that the finding is arbitrary and capricious and therefore violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.* Plaintiffs assert the following two claims for relief against Defendants Ralph Morgenweck, in his official capacity as Regional Director (Region 6) of the United States Fish and Wildlife Service, Steven William, in his official capacity as Director of the United States Fish and Wildlife Service, and Gale Norton, in her official capacity as Secretary of the Interior: violation of ESA provision 16 U.S.C. § 1533(b)(3) and violation of APA provision 5 U.S.C. § 706(2)(A).

The State of Wyoming also asserts an interest in the outcome of this litigation and the parties have agreed to it appearing as a limited intervenor. Wyoming contends that the Court's ruling on this matter will directly affect its statewide programs that manage and regulate YCT populations and habitat.

## II. PROCEDURAL HISTORY

Plaintiffs filed their complaint and corporate disclosure statement on January 20, 2004. Defendants filed their answer on March 22, 2003. Shortly thereafter, Wyoming filed a motion to intervene and the State of Idaho filed a motion to file *amicus* briefs. On May 26, 2004, the Court entered an order denying these motions and Wyoming subsequently filed a notice of appeal with the Tenth Circuit. On October 14, 2004, Wyoming filed an unopposed motion in which it stated that the parties agreed to allow Wyoming to participate as intervenor. The Court granted the unopposed motion, but limited Wyoming's arguments to "the adequacy of its management plans and policies for Yellowstone cutthroat trout to the extent, if at all, that such plans and policies have any bearing on the issues plaintiffs raise in their complaint." Plaintiffs filed their Petition for Review of Agency Action on September 1, 2004, with defendants and Wyoming[2] responding on October 22, 2004. Plaintiffs filed a reply brief on November 3, 2004. The Court held oral argument on the Petition for Review of Agency Action on December 9, 2004.

---

**2.** Wyoming responds to Plaintiffs' Petition for Review with a Memorandum of Law in Opposition to Plaintiffs' Petition for Review of Agency Action and attaches voluminous exhibits thereto. The memorandum does little more than restate the status of YCT management in Wyoming and the state's perception of its success. It also addresses the existence (or lack thereof) of YCT within its waterways and offers substantive argument in opposition to plaintiffs' contention that the YCT population is declining. In the Court's order allow-

ing Wyoming's intervention, the Court directed Wyoming to limit its arguments to "the adequacy of *its management plans and policies for Yellowstone cutthroat trout to the extent, if at all, that such plans and policies have any bearing on the issues plaintiffs raise in their complaint.*" (Emphasis added.) Wyoming does not appear to have followed this directive. For the most part its arguments are irrelevant to the narrow legal issue at hand, whether defendants' actions violated certain provisions of the ESA and APA.

## III. PETITION FOR REVIEW OF AGENCY ACTION

In their Petition for Review of Agency Action, plaintiffs request that this Court overturn FWS's finding that the Petition did not present substantial evidence warranting listing of the YCT as threatened because the finding was substantively incorrect and the 90–day review was procedurally flawed. Plaintiffs request that the Court order FWS to conduct the next step in the ESA·evaluation process, a 12–month status review of Petition-this time to all interested parties.

*Standard of Review*

In 1973, Congress enacted the ESA "to provide a program for the conservation of ... endangered species and threatened species." 16 U.S.C. § 1531(b). The Supreme Court has commented that the ESA represents "the most comprehensive legislation for the preservation of endangered species enacted by any nation." *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 180, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). In order to receive the ESA's protections, a species must be "listed" as endangered or threatened. Upon the filing of a citizen petition to list a species, § 1533(b)(3)(A) states "[t]hat to the maximum extent practicable," within 90 days after receiving the petition, the Secretary "shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted."

■ A finding as to the validity of a citizen petition to list a species as endangered or threatened is reviewed as an agency action subject to the standards of review under the APA. *Friends of the Bow v. Thompson,* 124 F.3d 1210, 1214–15 (10th Cir.1997) (internal citations omitted). Under the APA, the Court is required to hold unlawful and set aside agency action, findings, and conclusions found to be-

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

\*     \*     \*     \*     \*     \*

(D) without observance of procedure required by law .·...

5 U.S.C. § 706(2)(A), (D). Thus, the Court here must examine FWS's substantive finding on the Petition's validity and its process of review of the Petition to determine if these actions were contrary to law and must be set aside.

*Was FWS's Finding Arbitrary and Capricious?*

The Court must first consider whether FWS's substantive finding that the Petition did not present substantial scientific or commercial information indicating that listing of the YCT may be warranted was arbitrary and capricious. There are several factors that persuade the Court that FWS's rejection of the Petition on this basis was arbitrary and capricious and that a 12–month status review of the Petition pursuant to 16 U.S.C. § 1533(b)(3)(B) is necessary. First, FWS used an incorrect standard to determine the extent of danger to the YCT population. Second, FWS improperly relied on voluntary and promised state management actions to deny protection for YCT. Third, the Petition contains substantial evidence indicating that listing the YCT as threatened may be warranted.

First, FWS applied an incorrect standard-whether there was conclusive evidence that the YCT faced a high probability of extinction-to its determination of whether listing was appropriate. FWS concluded that the YCT did not face a high probability of extinction. However, the ESA does not require such conclusive evidence that listing is warranted to go to the next step. As stated in *Moden v. United*

*States Fish & Wildlife Serv.,* 281 F.Supp.2d 1193, 1203 (D.Or.2003):

> The ESA directs the Secretary of the Interior to evaluate a petition to determine whether it contains "substantial scientific or commercial information indicating that the action may be warranted." 16 U.S.C. § 1533(b)(3)(A) (emphasis added). Similarly, the regulations define "substantial" information in nonstringent terms, stating that it is "that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b)(1).

■ Thus, it is clear that the ESA does not contemplate that a petition contain conclusive evidence of a high probability of species extinction to warrant further consideration of listing that species. Instead, it sets forth a lesser standard by which a petitioner must simply show that the substantial information in the Petition demonstrates that listing of the species may be warranted. FWS's failure to apply this appropriate standard renders its findings and ultimate conclusion flawed.

■ Second, FWS's reliance upon its consultations and agreements with regulatory agencies of the states of Idaho, Montana and Wyoming was neither necessary nor conclusive. These consultations, with or without allowing input from the public as a whole, but especially without, were procedurally improper as discussed in more detail below. Moreover, the consultations present an additional substantive problem—FWS's apparent reliance upon future promises of action by the states after consultation. The law is clear that FWS cannot consider future conservation efforts in its review of the Petition. *See Oregon Natural Resources Council v. Daley,* 6 F.Supp.2d 1139, 1153–55 (D.Or. 1998); *Southwest Center for Biological Diversity v. Babbitt,* 939 F.Supp. 49 (D.D.C. 1996) (remanding action to Secretary and instructing him to reconsider a 12–month finding on a petition without basing the finding on promises of proposed future actions of the Forest Service). Yet that is exactly what happened here. Apparently, FWS and those states entered into a Conservation Agreement after the filing of the Petition in which the states volunteered to implement certain procedures and projects in order to maintain the YCT in their waterways. The Conservation Agreement does not legally bind the states to implement such actions. A National Parks Service ("NPS") representative alluded to this problem in an email to other agency representatives, stating that "much of the security [of the YCT] is a result of intervention, which costs a lot [sic] of money and money is seldom assured over the long term." Exhibit 4 to Plaintiffs' Petition for Review. Other agency representatives echoed this sentiment.

■ Finally, the evidence before the Court demonstrates that the Petition itself presented substantial scientific and commercial information indicating that listing of the YCT as a threatened species may be warranted, and thus FWS's conclusion to the contrary is arbitrary and capricious. The Petition and its attached exhibits credibly indicate that listing of the YCT as a threatened species is warranted because loss of its habitat (up to 90% of its original historical range) is threatening the species continued existence. NPS, Yellowstone Center for Resources, after reviewing the Petition, concluded that it "does recognize that serious threats face the [YCT] throughout its range . . . ." Several other parties also reached this conclusion, including a representative of the Shoshone–Bannock Tribe who wrote, "the [YCT] are indeed imperiled by factors described in the petition for listing." Exhibit 10 to Plaintiffs' Petition for Review. Aspects of the Petition were corroborated by com-

ments submitted by the Forest Service indicating that a majority of the remaining populations of YCT were at risk, and that 196 populations were already extinct.

FWS failed to directly consider these specific comments and the general issue of habitat fragmentation and degradation and its resulting effects on the YCT as set forth in the Petition, and instead only tangentially touched upon them in reference to other issues. Unlike the other factors listed in the Petition that FWS responded to in a point-by-point manner, FWS largely did not address the issue of habitat fragmentation and degradation, even though the Petition presented substantial information of its negative impact on the YCT.

This is not to say that FWS must blindly accept statements in petitions that constitute unscientific data or conclusions, information FWS knows to be obsolete or unsupported conclusions of petitioners. Of course FWS can rely on what is within its own expertise and records to reject petitions consistent with ESA standards.

The ESA mandates that a species be listed if it is threatened as defined in 16 U.S.C. § 1532(20), *i.e.* "in danger of extinction throughout its entire range." *See* U.S.C. § 1533(a)(2)(A)(i). In spite of this mandate and evidence in the Petition showing that the YCT faces one or more substantial threats to its existence in nearly every location in which one of its population remains, there is no indication in the record that FWS properly considered whether the dramatic loss of YCT habitat could result in extinction of the YCT in its entire range. Nor is there any evidence in the record that shows how FWS evaluated the issue of habitat fragmentation and degradation. While some of the information in the Petition may have been "outdated" as defendants suggest, the information was not necessarily inadequate or incorrect. Some of the data in the Petition may well

have become stale due to FWS's failure to complete its review in a more timely manner. What FWS deemed to be "contradictory" is not clear from the record. FWS's failure to consider all of the relevant information in the Petition, including information it considered to be no longer current but not necessarily obsolete or misleading, was inappropriate. For these reasons, the Court finds that FWS failed to give proper consideration to the Petition and its attached information pursuant to the 90–day review process. Its failure to do so was arbitrary and capricious and its decision therefore must be set aside.

*Did FWS Properly Consider Information and Opinions Solicited from Outside Sources as Part of the 90–day Review?*

██ The Court must also consider whether FWS's facially inadequate 90–day review of the Petition was somehow cured by resort to limited outside sources for information and expertise. Plaintiffs contend that FWS did not properly conduct the 90–day review because it solicited information and opinions on the Petition's validity from outside sources, which the ESA allegedly prohibits under 16 U.S.C. § 1533(b)(3)(A), instead of evaluating only the information presented in the Petition. Defendants respond that plaintiffs misconstrue what information FWS may consider to adequately comply with the 90–day review requirement. They argue that plaintiffs' contention that FWS must consider the Petition alone, without regard to outside evidence provided by regulatory agencies, places too narrow a scope of review upon FWS at the 90–day stage.

FWS engaged in a broad scope of review of the Petition at the 90–day review stage, a scope much broader than is typical at that stage. *See* Plaintiffs' Reply Brief at p. 5–6, which describes several instances where, in examining petitions, FWS did not examine any outside information dur-

ing the 90–day review and explained that it does not normally "conduct additional research at this, point, nor [does it] subject the petition to rigorous critical review." Here, FWS elicited twelve opinions from wildlife regulatory agencies in Idaho, Montana and Wyoming and consulted with NPS and the Forest Service as to the validity of the Petition. These agencies provided FWS with letters, reports and data regarding YCT populations and the states' management programs. In fact, FWS held meetings with agency representatives on numerous occasions to discuss the Petition.

In support of FWS's consultation with these outside agencies, defendants rely heavily upon a FWS policy adopted in 1996 that governs consideration of citizen-initiated petitions, the Petition Management Guidance (the "PMG"), which states that "in determining whether substantial information exists for a petition to list a species, [FWS] will take into account information submitted with and referenced in the petition and all other information readily available in [FWS's] files, including any information provided by State agencies and Tribal governments." However, as defendants admit in a footnote in their brief, a recent case from the D.C. District calls into question the process by which the PMG was promulgated, and ultimately overturns the PMG. *See American Lands Alliance v. Norton,* 242 F.Supp.2d 1, 19 (D.D.C.2003) (finding that the PMG are facially invalid and violate the public notice and comment procedures set forth at § 1533(h) of the ESA); *Center for Biological Diversity v. Norton,* 254 F.3d 833, 840 (9th Cir.2001) (holding that the PMG violates the plain terms of the ESA). Therefore, the Court does not view the PMG as binding authority, but in any event its impact on this Petition is limited.

FWS's consideration of outside information and opinions provided by state and federal agencies during the 90–day review was overinclusive of the type of information the ESA contemplates to be reviewed at this stage. Such a targeted information gathering campaign, begun only after the Petition had been filed, was improper. FWS certainly need not make a positive finding after its 90–day review of every petition filed, necessitating a status review of every petition. The ESA simply does not endorse such rubber-stamping of petitions. However, those petitions that are meritorious on their face should not be subject to refutation by information and views provided by selected third-parties solicited by FWS.

Invitations by FWS to others to respond to the Petition should await the 12–month status review. Indeed the PMG itself does not call for or even permit the closed investigation undertaken by FWS beyond an internal assessment. FWS being allowed by the PMG to look into its own files is one thing; creating new research files post-Petition is not authorized by the PMG.

If there had been a positive finding on the Petition, FWS would have had to proceed with a 12–month status review. 16 U.S.C. § 1533(b)(3)(B). Under such a review, FWS would have had to invite comment from all interested parties regarding the status of the YCT to determine if listing was warranted, not warranted, or warranted but precluded. 50 C.F.R. § 424.15(c). FWS could not simply bypass the initial 90–day review process and go directly to a 12–month status review. 16 U.S.C. § 1533(b)(3). Even if it could, the two and a half year undertaking by FWS after receipt of the Petition simply did not meet the 12–month status review criteria. FWS admittedly did not invite or seek public comment from all interested parties, but only state and federal regulatory agencies. While it certainly is a "logical posi-

tion that others [regulatory agencies] who have an independent mission to manage wildlife are excellent sources of available information," as defendants contend, FWS is required to consult not just with these entities, but with all parties with relevant information before a determination is made at the 12–month stage. For these reasons, the Court finds that FWS's 90–day review of the Petition and its attached information was impermissibly overinclusive in that it went beyond its review mandate.

## IV. REQUEST FOR JUDICIAL NOTICE

On November 3, 2004, plaintiffs filed a Request for Judicial Notice (Dkt.# 56) in which they request that the Court take notice of seven newspaper and academic articles that describe the declining YCT population and offer theories to explain the decline. Defendants correctly contend that if plaintiffs offer the documents for the truth of the facts contained therein, they are inadmissible under F.R.E. 201(b)(2) because the facts are not "universally known." However, it appears that the documents at issue are not being offered for the truth of their contents, but instead to demonstrate only that had FWS provided an opportunity for public participation in the review, additional scientists and researchers might well have commented and offered conclusions different from those of the regulatory agencies that FWS did consult.

██ While not falling directly within F.R.E. 201(b)(2), it is permissible for the Court to take judicial notice of the contents of documents as "legislative facts," discussed in the Comment to F.R.E. 201(b)(2), for the limited purpose of establishing that the view of FWS as to the merits of the Petition is not necessarily shared by all in the scientific and environmental communities. *See e.g.* the famous

"Brandeis brief" submitted in *Muller v. Oregon*, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908) found at *http://library.louisville.edu/law/brandeis/muller.html*. While the contents of these documents was not at all dispositive to the Court's decision (the Petition stands on its own), the request for judicial notice is GRANTED.

## V. CONCLUSION

FWS's consideration of the Petition requesting listing of the YCT as threatened was both substantively and procedurally flawed, being both improperly underinclusive and overinclusive. First, FWS arbitrarily and capriciously evaluated the substance of the Petition and its attachments by incorrectly concluding that the Petition did not present substantial information that listing the YCT as threatened may be warranted. Second, FWS arbitrarily and capriciously conducted a 90–day review of the Petition by soliciting information and opinions from limited outside sources.

Accordingly, the Court GRANTS Plaintiffs' Petition for Review of Agency Action (Dkt.# 40), filed September 1, 2004, and overturns defendants' February 23, 2001 finding on the listing of the YCT. FWS is hereby ORDERED to complete the 12–month status review of the Petition as mandated by the ESA in 16 U.S.C. § 1533(b)(3)(B). The same result may well ensue after FWS conducts such a review, perhaps not; but an implicit assumption of the ESA is that going through the right processes helps to ensure the right result in matters within its purview.

The Court also GRANTS Plaintiff's Request for Judicial Notice (Dkt.# 56), filed November 3, 2004, for the limited purpose for which it was proffered.